IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief November 26, 2002

## SHIRLEY S. DANIEL v. JAMES E. DANIEL

**Appeal from the Chancery Court for Obion County**
**No. 22,513    William Michael Maloan, Chancellor**

**No. W2002-01103-COA-R3-CV - Filed July 22, 2003**

This is an alimony case. At the time of the divorce, the parties had been married for almost thirty-one years. The husband was fifty-one years old, and the wife was forty-five years old. The husband owned his own backhoe/trackhoe company. The wife was a homemaker and raised the parties' three children. She has a sixth-grade education and earned her GED in 1997. Since the parties' separation, the wife had held five jobs but had not been able to maintain her employment. The parties agreed on the division of personal and real property, but disagreed over the value of the husband's business property. The trial court found that the husband made it difficult to ascertain the parties' financial situation. The trial court also found that the wife was economically disadvantaged and could not be rehabilitated. The wife was awarded alimony *in futuro* and attorney's fees. On appeal, the husband argues that the trial court erred in awarding the wife alimony *in futuro* and attorney's fees. We affirm, finding that the trial court did not err in concluding that the wife cannot be rehabilitated and in awarding alimony *in futuro* and attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

James H. Bradberry, Dresden, Tennessee, for appellant, James E. Daniel.

Steve Conley, Union City, Tennessee, for appellee, Shirley S. Daniel.

### OPINION

Defendant/Appellant James E. Daniel ("Husband") and Plaintiff/Appellee Shirley S. Daniel ("Wife") were married on March 20, 1971 and divorced on March 12, 2002. The parties have three adult children. At the time of the divorce, Husband was fifty-one years old and Wife was forty-five years old.

Husband owns his own backhoe/trackhoe company. From 1995 to 2000, Husband earned between $50,000 and $65,000 in gross income each year. The parties separated in October 2000. In 2001, after the parties separated, Husband reported earnings of only $38,082. During the marriage, Wife was primarily a homemaker, raising the parties' children. Generally, she earned less than $10,000 per year, except in 1986 and 1987, when she earned $12,740 and $10,907 respectively. Wife has a sixth-grade education and earned her GED in 1997.

Wife filed for divorce on October 12, 2000, asserting that the parties had irreconcilable differences and that Husband had engaged in inappropriate marital conduct. She sought alimony *in solido*, alimony *in futuro*, and attorney's fees. Husband denied that he was guilty of inappropriate marital conduct, and denied that Wife should receive alimony or attorney's fees. The trial court awarded Wife temporary support in the amount of $100 per week, and ordered Husband to pay Wife's car note of $348.79 per month. On June 20, 2001, Husband moved to terminate spousal support based on a downturn in his business and Wife's ability to support herself. His motion was denied, and the trial court ordered Wife to use reasonable efforts to become employed. Wife was awarded a judgment for Husband's support arrearage of $1,250.

Husband and Wife agreed on the division of their personal and real property. Husband received a farm owned by the parties with equity of approximately $16,000, two certificates of deposit valued at approximately $13,160, a checking account with approximately $1,000, his work equipment, a truck with approximately $2,250 in equity, a four-wheeler, and other personal property, including his tools. Wife received the marital residence, which had no indebtedness and was valued at $37,500, as well as a Blazer truck with approximately $4,000 in equity, and other personal property.

The trial was held on March 12, 2001. Wife testified regarding her employment and living expenses. Wife acknowledged that, since the parties' separation in October 2000, she had held five jobs with pay ranging from minimum wage up to $6.65 per hour, but had been unable to maintain any of the five jobs. Wife explained that going back to work had been difficult for her emotionally, and that she had been unable to handle the workload. Wife testified that she was depressed, had high blood pressure, and that she had had tendinitis while recuperating from shoulder surgery. She said, however, that she felt she was able to work forty hours a week at a minimum-wage job, which would earn her a gross income of $953 per month. She testified that her monthly expenses totaled $1,549.05.

Husband also testified regarding his earnings and expenses. He asserted that while his earnings in past years had ranged between $50,000 and $65,000, his income for 2001 was only $32,082. He claimed that, considering certain tax deductions for that year, his actual income was zero dollars. He acknowledged that this did not include income from certain customers who paid him cash. He noted that one customer had paid him $1,400, and testified that there may have been "two or three $200 jobs" in addition to the $1,400 job. Husband also acknowledged that he had received gambling winnings of $100 or $150 on each of three or four occasions.

The parties disputed the amount owed on Husband's business equipment, as well as the value of that equipment. Husband borrowed money from a line of credit that had a $15,316.30 payoff amount. Husband also owed $96,598.22 for various business equipment, including a trackhoe, a tractor truck and low-boy, two additional tractors, and a dirt pan. Evidence submitted by Wife indicated that the trackhoe had an auction value of $41,500 and a retail value of $49,750. Evidence submitted by Husband showed a value of $35,000 for the trackhoe and $19,250 for the remaining equipment. The record reflects that Husband owed $20,142.94 for his 1999 truck, $16,117.59 for the farm, $6,324.34 for a four-wheeler purchased after the parties separated, and $3,901.01 for a truck Husband purchased for his brother. Husband asserted that his brother was paying the $3,901.01 debt on the truck.

Husband's pre-trial affidavit asserted that Husband's monthly expenses were $11,158.35. $8,741.56 out of the $11,158.35 was allocated to Husband's outstanding loans, including the work equipment, the truck, Wife's Blazer, the farm, the four-wheeler, and the brother's truck. This did not include the line of credit. On cross-examination, Husband acknowledged that, excluding the line of credit, his monthly payments for the outstanding loans totaled $3,150.99.

Wife also sought her attorney's fees at trial. Her attorney stated that he worked forty hours on Wife's case, and at $125 per hour, Wife had accumulated $5,000 in attorney's fees.

At the close of proof, the trial court commented that the case was difficult to evaluate because of the "incomplete and inaccurate information which has been provided to the Court about the parties' financial condition." The trial court concluded that Wife could not be rehabilitated and awarded her alimony *in futuro*, stating:

> The Court finds that [Wife] is economically disadvantaged in respect to her husband, and certainly does not have the ability to earn income anywhere like her husband has done in the past and hopefully will be able to in the future. Due to her lack of education and transferrable job skills, she is not subject to rehabilitation within the meaning of the statute, so this is an appropriate case for alimony *in futuro* which is modifiable in the future depending on the change of circumstances. I am also taking into consideration the fact that [Wife] is physically able work at least at a minimum [forty] hours a week at minimum wage . . . .

The trial judge awarded Wife $500 per month alimony *in futuro*, but noted that Husband would no longer be responsible for paying temporary support or Wife's car note of $348.79 per month.

The trial court granted Wife's request for attorney's fees, stating:

> As I stated earlier, this is a most difficult case to evaluate because of the incomplete and inaccurate financial condition mostly on [Husband's] part and I am concerned about the large amount of attorney's fees that have been expended on the case but

most of that has been spent trying to get an accurate picture of the financial condition that [the lawyers] had to spend to try to get ready for this trial.

Based on this finding, the trial court ordered that Husband pay court costs plus attorney's fees in the amount of $5,415.25.[1]  From this order, Husband appeals.

On appeal, Husband argues that the trial court erred in awarding Wife alimony *in futuro* and attorney's fees.  Because this case was heard by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court, unless the evidence preponderates against the decision of the trial court.  *See* Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995).  Questions of law, however, are reviewed *de novo* with no presumption of correctness.  *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001) (citation omitted).  An alimony award is generally not overturned on appeal unless the award evidences an abuse of discretion.  *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997).  An award of attorney's fees is also reviewed under an abuse of discretion standard. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 751 (Tenn. 2002) (citing *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995); *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983)).  A trial court abuses its discretion when it reaches a decision against logic that causes a harm to the complaining party or when the trial court applies an incorrect legal standard.  *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

Husband first argues that the trial court erred in finding that Wife cannot be rehabilitated and in awarding Wife $500 alimony per month *in futuro*.  Husband asserts Wife is able to work a forty-hour work week, and therefore, can earn at least her 1986 income of $12,740.  He claims that the economic climate has rendered him unable to pay any alimony award, and argues that he is burdened with the debts of his business equipment, line of credit, truck, farm, and four wheeler.  He points out that Wife was awarded the unencumbered marital home valued at $37,500, and therefore can provide for herself.

Wife notes on appeal that her monthly living expenses total $1,549.05 and that even if she is able to earn a gross monthly income of $953, she still has a considerable deficit.  Wife argues that Husband admittedly did not accurately report his income or his living expenses, and that when accurate figures are considered, Husband has the ability to pay his alimony obligation.

The Tennessee Legislature has clearly expressed a preference for awarding rehabilitative alimony over other types of alimony.  *See* Tenn. Code Ann. § 36-5-101(d)(1) (2001).  Nevertheless, while rehabilitative alimony is preferred, when rehabilitation is not feasible, the trial court may award alimony *in futuro*.  *Id.*

---

[1]Although the record indicates a possible discrepancy between the trial court's oral ruling and its written order, the parties agreed on appeal that Husband would pay the full $5,416.25 as ordered by the trial judge, unless this Court reversed the attorney's fees decision in its entirety.

The trial court must consider all the relevant factors set forth in section 36-5-101(d)(1)(A)-(L) when determining what type of alimony to award and the nature and extent of that award.[2] *Robertson v. Robertson*, 76 S.W.3d 337, 340 (Tenn. 2002). The two most important factors are the need of the obligee spouse and the ability of the obligor spouse to pay. *Id.* at 342 (citation omitted). The obligor spouse's ability to provide support is given the same consideration as the need of the obligee spouse. *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001). A determination of whether rehabilitation is feasible should not rest solely on the ability of the economically disadvantaged spouse to be placed on an equal footing with the obligor spouse, nor should it be based on the ability of the economically disadvantaged spouse to obtain the lifestyle the parties maintained prior to the divorce. *Robertson*, 76 S.W.3d at 340 (citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000)). In some circumstances, the obligee spouse may become partially self sufficient. "If the dependent spouse achieves partial self sufficiency but demonstrates inability to achieve total self

---

[2]The factors enumerated in section 36-5-101(d)(1)(A)-(L) are:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(A)-(L) (2001).

sufficiency, the Court may grant sufficient alimony *in futuro* to supplement the earning capacity of the dependent spouse." ***Loria v. Loria***, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997).

In the case at bar, the trial judge determined that Wife was economically disadvantaged in relation to Husband and that her lack of education and transferable job skills left her unable to be rehabilitated. Although Wife is able to work full time earning just over minimum wage, her earning capacity is such that, even though her living expenses are modest, she requires additional income to become completely self sufficient. Wife is able to earn a gross income of $953 per month. Her expenses, paid from *net* income, amount to $1,549.05. Thus, Wife's deficit is over $596 per month minus any applicable taxes she must pay on her $953 gross income. Clearly, the evidence supports the trial court's finding that Wife cannot be rehabilitated.

The evidence also supports the trial court's award of alimony *in futuro*. The evidence indicated that Wife's earning capacity is approximately $12,740. In contrast, prior to the parties' separation, Husband reported annual earnings ranging between $50,000 and $65,000. While Husband asserted that his earnings plummeted after the parties separated, he admitted that he failed to include income from sources such as cash payments from customers and gambling winnings in the calculation of his post-separation earnings. ***See*** Tenn. Code Ann. § 36-5-101(d)(1)(A). In the division of marital property, Husband received the farm worth $16,000, plus certificates of deposit and cash totaling over $14,000. ***See id.*** During most of the parties' thirty-year marriage, Wife was a homemaker, raising the parties' three children. ***See*** Tenn. Code Ann. § 36-5-101(d)(1)(C), (J). As noted above, Wife's need is apparent considering the difference between her potential income and her expenses. Considering all of these circumstances, we find no abuse of discretion in the trial court's award of alimony *in futuro* in the amount of $500 per month.

Husband also argues that the trial court erred in awarding Wife $5,416.25 in attorney's fees. As stated above, the granting of attorney's fees is largely at the discretion of the trial court, and the reviewing court will not disturb that determination unless it evidences an abuse of discretion of the trial judge. ***Langschmidt v. Langschmidt***, 81 S.W.3d 741, 751 (Tenn. 2002) (citing ***Aaron v. Aaron***, 909 S.W.2d 408, 411 (Tenn. 1995); ***Fox v. Fox***, 657 S.W.2d 747, 749 (Tenn. 1983)). We find no abuse of discretion in the award of attorney's fees in this case.

Finally, Wife seeks her attorney's fees as they relate to this appeal. This request is granted, and the cause is remanded to the trial court for a determination of the amount of reasonable attorney's fees for this appeal.

The decision of the trial court is affirmed and the cause is remanded for further proceedings consistent with this Opinion. Costs are taxed to appellant, James E. Daniel, and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, J.