Newton Byrd AARON, III,
Plaintiff–Appellee,

v.

Mary Catherine AARON, Defendant–
Appellant.

Supreme Court of Tennessee,
at Jackson.

Sept. 11, 1995.

Order Denying Rehearing Nov. 6, 1995.

David E. Caywood, Darrell D. Blanton, Causey, Caywood, Taylor & McManus, Memphis, for plaintiff-appellee.

Mary Catherine Aaron, pro se, Memphis, for defendant-appellant.

## OPINION

BIRCH, Justice.

In this cause, we granted Mary Catherine Aaron's application for review under Rule 11, Tenn.R.App.P., in order to determine whether the Court of Appeals correctly reversed and modified the trial court's judgment ordering Newton Byrd Aaron, III, to: 1) pay $1,500 per month alimony *in futuro* until Ms. Aaron's death or remarriage; 2) pay Ms. Aaron's attorney's fees in the amount of $35,184.98; and 3) provide funds for tuition and supplies to enable Ms. Aaron to complete a four-year college degree.

We are of the opinion that the ruling of the Court of Appeals regarding each of the three questions is erroneous, and for the reasons herein developed, the judgment is reversed.

## I

The Aarons married on December 27, 1979—her third marriage and his fourth. There are two children of this marriage— Starr, born July 11, 1980, and Newton IV, born October 10, 1981. At the time of divorce, Mr. Aaron was forty-five, and Ms. Aaron was forty-six.

When the case was heard, Mr. Aaron was employed by the Gleason Peacock Company in Atlanta, Georgia; he earned $130,000 annually. Additionally, this employment provided major medical insurance and reimbursed him for business expenses. He has an M.B.A. degree from Georgia State University and approximately twenty-five years of experience in the work force. For each of the years 1988 through 1991, his average gross income was approximately $295,000.

Ms. Aaron worked in the home and had never held outside employment. Additionally, she entertained her husband's associates and contributed to the family welfare in innumerable other ways. At the time of trial, Ms. Aaron was attending the Shelby State Community College in pursuit of a bachelor's degree.

The combined talents and efforts of the Aarons enabled them to enjoy a relatively high standard of living. They purchased expensive jewelry, clothing, and household furnishings. Additionally, the family vacationed in such places as Europe and Hawaii. Moreover, the children enjoyed music, ballet, and dancing lessons, as well as athletics and other meaningful activities.

The trial court decreed the divorce to Ms. Aaron on the grounds of inappropriate marital conduct. The court awarded custody of the two children to Ms. Aaron and ordered Mr. Aaron to pay $2,459.68 monthly for their support. Additionally, he was ordered to maintain medical, hospital, dental, and orthodontic insurance for the children. Moreover, the court ordered him to procure and maintain an insurance policy on his life in the amount of $750,000, with the children as beneficiaries.

The court ordered Mr. Aaron to pay Ms. Aaron the sum of $1,500 per month as alimony *in futuro* until her death or remarriage. To ensure the fulfillment of this obligation, he was ordered to maintain a policy of insurance on his life in the amount of $250,000, with Ms. Aaron as the beneficiary, until his alimony obligation ended. He was further ordered to pay Ms. Aaron's attorney's fees of $35,184.98. Finally, the trial court ordered Mr. Aaron to pay tuition and costs necessary for Ms. Aaron to complete a bachelor's degree.

On appeal by Mr. Aaron, the Court of Appeals affirmed the custody award and the property division. Though finding that Ms. Aaron was not able to be rehabilitated within the meaning of Tenn.Code Ann. § 36-5-101(d), the intermediate court nevertheless modified the alimony order by reducing its term to six years. In light of this modification, the intermediate court permitted Mr. Aaron to reduce the amount of life insurance to a face value reflective of the amount necessary to ensure fulfillment of the modified

alimony obligation; that is, $1,500 monthly for six years. The court also relieved Mr. Aaron of the obligation to pay Ms. Aaron's attorney's fees; rather, it ordered the attorney's fees be paid from the proceeds of the sale of a marital asset (realty located in Polk County, Georgia) before the proceeds were equally divided between the parties. Thus, effectively, each party was to pay one-half of Ms. Aaron's attorney's fees. Finally, the intermediate court relieved Mr. Aaron of the responsibility to pay Ms. Aaron's education costs.

Ms. Aaron appeals to this Court, insisting that the Court of Appeals erred in modifying the alimony and attorney's fees awards, and in reversing the order that Mr. Aaron provide education expenses.[1]

## II

The issues we here consider are:

1. Whether the Court of Appeals erred in modifying the trial court's award of alimony;

2. Whether the Court of Appeals erred in modifying the trial court's order of attorney's fees; and

3. Whether the Court of Appeals erred in reversing the trial court's order of educational expenses.

■ In cases such as the one under submission, where the cause was tried without a jury, we note that while concurrent findings of fact are binding on the reviewing court if supported by any material evidence, such a rule does not apply to questions of law or mixed questions of law and fact. *Bubis v. Blackman,* 435 S.W.2d 492, 498 (Tenn.Ct. App.1968). Mixed questions of law and fact are subject to review. *Murdock Acceptance Corp. v. Jones,* 362 S.W.2d 266, 268 (Tenn.Ct. App.1961). We find that a presumption of correctness does not attach, but as with questions of law, this Court has great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal.

■ As stated, the trial court awarded Ms. Aaron alimony *in futuro* of $1,500 per month until her death or remarriage. Additionally, Mr. Aaron was ordered to name Ms. Aaron as the beneficiary of a $250,000 life insurance policy until his alimony obligation ceased.

In Tennessee there is a preference for rehabilitative alimony. However, where rehabilitation is not feasible, a court may grant alimony *in futuro.* Tenn.Code Ann. § 36–5–101(d)(1) (Supp.1994); *Self v. Self,* 861 S.W.2d 360, 361 (Tenn.1993).

Using the above section as a basis for their respective analyses, the trial court and the Court of Appeals concluded that Ms. Aaron was not capable of being rehabilitated. Based on the findings of fact regarding Ms. Aaron's education, employment history, and standard of living enjoyed during marriage, we concur in the finding that she is not capable of rehabilitation.

This conclusion led, the trial court to find that Ms. Aaron was entitled to $1,500 per month until her death or remarriage; in contrast, the Court of Appeals found that she was entitled to that amount for six years. As the trial court's award is a mixed question of law and fact, we now review it.

■ "The amount of alimony to be allowed in any case is a matter for the discretion of the trial court in view of the particular circumstances." *Ingram v. Ingram,* 721 S.W.2d 262, 264 (Tenn.Ct.App.1986) (*citing Newberry v. Newberry,* 493 S.W.2d 99 (Tenn. Ct.App.1973)). While there is no absolute formula for determining the amount of alimony, "the real need of the spouse seeking the support is the single most important factor. In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support." *Cranford v. Cranford,* 772 S.W.2d 48, 50 (Tenn.Ct.App.1989) (citations omitted). Further, the amount of alimony should be determined so "that the party obtaining the divorce [is not] left in a worse financial situation than he or she had before the opposite party's misconduct brought about the di-

---

1. Ms. Aaron also urges that the Court of Appeals erred with regard to the issue of the division of marital property. Because we find that the Court of Appeals affirmed the trial court with respect to this issue, as she requested, this is not a justiciable issue.

vorce." *Shackleford v. Shackleford,* 611 S.W.2d 598, 601 (Tenn.Ct.App.1980) (citations omitted).

In this case, the trial court found that Mr. Aaron was the primary wage-earner with a then income of $130,000 and an historical salary in excess of $200,000. On the other hand, the trial court found that Ms. Aaron was a homemaker, had never worked, and had not earned a college degree. Although she intended to go back to school, her earning power was limited by her age and lack of significant experience.

The trial court also found that both parties had enjoyed a high standard of living during the marriage. Ms. Aaron offered proof that in order for her and the children to maintain their pre-divorce standard of living they would need $6,461.70 per month. While alimony is not intended to provide a former spouse with relative financial ease, we stress that alimony should be awarded in such a way that the spouses approach equity. Finally, Mr. Aaron offered no proof that he is unable to pay the alimony ordered by the trial court. We conclude that, based on these facts, $1,500 per month is insufficient to meet Ms. Aaron's needs. Thus, we award her $2,500 per month. While this will not put her in the same position in which she was prior to the divorce, it will provide her with "closing in" money; that is, she will be enabled to more closely approach her former economic position. Further, we find that she is entitled to permanent alimony, not to be terminated until her death or remarriage.

Therefore, with regard to the issue of alimony, the Court of Appeals and the trial court are reversed. Further, we remand to the trial court for a redetermination of the amount of life insurance Mr. Aaron must secure with Ms. Aaron as the beneficiary to ensure the fulfillment of his alimony obligation should he predecease her.

■ As for attorney's fees, the trial court ordered Mr. Aaron to pay $35,184.98 to Ms. Aaron for legal fees and expenses. The allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion. *Storey v. Storey,* 835 S.W.2d 593, 597 (Tenn.Ct.App.

1992); *Crouch v. Crouch,* 385 S.W.2d 288, 293 (Tenn.Ct.App.1964).

■ Here, Mr. Aaron incurred $62,885.30 in attorney's fees. He paid this from marital assets. Thus, in effect, Ms. Aaron's share of this obligation was $31,442.65, even though she has no obligation to pay these fees. Because the fees she incurred were approximately one half of those of Mr. Aaron, and in view of the fact that Mr. Aaron's desire for divorce precipitated her need for an attorney, we cannot say that the trial court abused its discretion in ordering Mr. Aaron to pay Ms. Aaron's attorney's fees. Additionally, by ordering her attorney's fees to be paid out of marital assets, the Court of Appeals has, in fact, required Ms. Aaron to pay one-half of her own fees in addition to one-half of Mr. Aaron's fees. This is not what the trial court had in mind, and we can neither discern nor determine the basis for the Court of Appeals' ruling. Therefore, we reverse the Court of Appeals on the issue of attorney's fees and reinstate the trial court's judgment.

■ The last issue concerns education expenses. We note that at the time of the trial, Ms. Aaron was pursuing her education. We commend her efforts to improve her situation. The trial court ordered Mr. Aaron to pay her education expenses. Since she is entitled, as noted earlier in this opinion, to "close in" on her former economic position, we reverse the Court of Appeals' judgment and reinstate the trial court's order for payment of education expenses.

In conclusion, we reverse the Court of Appeals. The alimony *in futuro* shall be as stated herein and the attorney's fees and education expenses awarded by the trial court shall be reinstated.

ANDERSON, C.J., DROWOTA and REID, JJ., and FONES, Special Justice, concur.

*ORDER ON PETITION TO REHEAR*

Newton Byrd Aaron, III, appellee, has filed a petition to rehear. Chiefly, he is concerned that this Court increased Mary Aaron's alimony *in futuro* even though she made no such request; thus, he contends, the

**412**

issue was not before the Court. We find that Newton Aaron's assertions are without merit and his Petition to Rehear is, hereby, respectfully, DENIED.

The issue of alimony *in futuro* was before this Court, and we know of no rule or principle of law which would thwart our efforts to do complete justice. "The rule is well settled in this state that under a prayer for general relief the court may grant any other and different relief from that specifically indicated and prayed for which is justified by the pleadings and the proof. *The Connecticut Indemnity Company v. DeGalleford,* 470 S.W.2d 5, 7 (Tenn.1971) (citations omitted). Moreover,

> a court of equity regards not mere forms, but looks to the substance of things; and if the facts appear upon the face of the bill, that entitle the party to a specific relief, although the forms of speech adopted in the bill be not technically the most appropriate, and although the form of prayer does not in totidum verbis embrace the specific relief to which the facts stated entitles the complainant.

*Id.* (citing *Dodd v. Benthal,* 51 Tenn. 601 (1871). In her counter-complaint, Mary Aaron specifically requested reasonable alimony and she prayed "for such other further and general relief which ... may appear and be proper." Moreover, she addressed the adequacy of the alimony in her brief to this Court: "Despite the Court's best efforts Wife is left is [sic] a dramatically lesser financial situation." The Court's modification is justified by the pleadings and the proof.

Furthermore, even if Newton Aaron is correct in his assertion that on appeal Mary Aaron did not request additional alimony, Tenn.R.App.P. 13(b) grants this Court considerable discretion to consider issues not presented for review in order to achieve fairness and justice.

Finally, as to Newton Aaron's contention that he lacked notice of a possible increase in the alimony award, the Court's modification constituted relief "within the purview and spirit of the equities set forth in [Mary Aaron's] bill." 470 S.W.2d at 7.

Mary Aaron has requested, by separate motion, that payment of the increased amount of alimony *in futuro* be ordered retroactive to June 18, 1992, the date of the final decree. This we decline to do. The increased payments shall take effect on the date of the release of this order.

ANDERSON, C.J., DROWOTA, REID, JJ., and FONES, Special Justice, concur.