# IN THE COURT OF APPEALS OF TENNESSEE, AT JACKSON

_____

|  |  |  |  |
|---|---|---|---|
| **JUDITH ANN WARREN TAYLOR**, | ) | Shelby Law No. | |
| | ) | 1050984 R.D. | |
| Plaintiff/Appellee. | ) | | |
| | ) | | |
| VS. | ) | C.A. No. 02A01-9706-CV-00112 | |
| | ) | | |
| **MICHAEL RAYMOND TAYLOR**, | ) | | |
| | ) | | |
| Defendant/Appellant. | ) | | |
| | ) | | |

FILED

June 8, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable Janice M. Holder, Judge**

**Marti L. Kaufman**, MONROE, KAUFMAN & McGHEE, Memphis, Tennessee
Attorney for Defendant/Appellant.

**Stevan L. Black**,
**Kimberly Harris Jordan**,
BLACK, BOBANGO & MORGAN, P.C., Memphis, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Judith Ann Taylor ("Wife") filed a complaint for divorce against Michael Raymond Taylor ("Husband") and also sought an injunction prohibiting Husband from dissipating marital assets. Husband filed an answer and counter-complaint for divorce. The trial court granted Wife the divorce on the grounds of inappropriate marital conduct and awarded her rehabilitative alimony, partial attorney fees, and 60% of the marital assets. Husband appeals and raises the following issues: whether the trial court erred (1) in awarding Wife rehabilitative alimony of $1,300 per month for 60 months; (2) in ordering Husband to pay $20,000 as alimony *in solido* for Wife's attorney fees; (3) in ordering Husband to pay a portion of Wife's health insurance coverage; (4) in requiring Husband to maintain a life insurance policy which exceeds the total amount of child support owed; and (5) in dividing the marital property of the parties. Wife submits the additional issue of whether she is due attorney fees on appeal. For the reasons stated below, we find no error and affirm the trial court's judgment in all respects.

The parties were married in July, 1978 and separated in January, 1996. At the time of the trial below, Husband was approximately 41 years old and Wife was approximately 38 years old. The parties have two children who are now approximately 16 and 13 years of age. The trial court awarded custody of both children to Wife.

Husband has a Bachelor's Degree in Business Administration from Oklahoma State University. At the time of the divorce, Husband was the Regional Director of Business Development for APS with a salary of Seventy-Seven Thousand Six Hundred Dollars ($77,600) per year. Husband had earned more substantial compensation in recent years, including approximately $160,000 in 1989, $100,506 in 1993, and $133,685 in 1994. Much of Husband's compensation was in the form of bonuses, the last of which was in March, 1996 for $17,500. Husband testified the company he worked for was bought out and that he had to change positions to keep his job. As a result of the change of position, Husband claims he is no longer entitled to any bonuses.

Wife attended Oklahoma State University for a year and a half, but does not have a college degree. Wife's work experience during the parties' marriage is varied. Before the birth of the parties' first child, Wife worked full-time as a receptionist. After the birth of the children, Wife

worked as a fill-in receptionist for a medical clinic where she earned $10 per hour. After the parties'
separation, Wife took a job working 16 hours a week at $6.00 per hour as a file clerk at Federated
Insurance Company. Wife testified that she did not seek a full-time position because she felt it was
necessary to keep the children's lives as stable as possible during the divorce.

## I. Rehabilitative Alimony

Husband challenges the trial court's award of $1,300 per month in rehabilitative
alimony to Wife. It is well established that the appellate courts should give much deference to the
trial court's award of alimony. *Jones v. Jones,* 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989).
Nevertheless, our review is *de novo* with a presumption of correctness for the factual findings of the
trial court. Tenn.R.App.P. Rule 13(d).

Our legislature has clearly established a preference for rehabilitative alimony. T.C.A.
§ 36-5-101(d)(1) (Supp. 1997). Our courts have affirmed this legislative policy by awarding
rehabilitative alimony whenever feasible. *Aaron v. Aaron,* 909 S.W.2d 408, 410 (Tenn. 1995), *Self
v. Self,* 861 S.W.2d 360, 361 (Tenn. 1993), *Storey v. Storey,* 835 S.W.2d 593, 597 (Tenn. Ct. App.
1992). The factors the court uses to determine whether rehabilitative alimony is proper in a given
set of circumstances are expounded in the statute as follows:

> (A) The relative earning capacity, obligations, needs, and
> financial resources of each party, including income from pension,
> profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the
> ability and opportunity of each party to secure such education and
> training, and the necessity of a party to secure further education and
> training to improve such party's earning capacity to a reasonable
> level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;
> (E) The physical condition of each party, including, but not
> limited to, physical disability or incapacity due to a chronic
> debilitating disease;
> (F) The extent to which it would be undesirable for a party to
> seek employment outside the home because such party will be
> custodian of a minor child of the marriage;
> (G) The separate assets of each party, both real and personal, tangible
> and intangible;
> (H) The provisions made with regard to the marital property
> as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so;  and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(A)-(L) (Supp. 1997).

Our review of the record convinces us the trial court properly considered these factors in its award of rehabilitative alimony.  Husband's main contention with the trial court's award is that the monthly amount he must pay is too high given the relative financial position of the two parties.  However, it is clear that Husband's current earning capacity and overall financial position is much better than that of Wife.  Even after furthering her education and increasing her marketable skills, Wife will be at a significant economic disadvantage compared to Husband.  Weighing this factor with the other factors to be considered, we cannot say the trial court erred in awarding rehabilitative alimony in the amount of $1,300 per month for 60 months.

## II. Attorney Fees

Husband challenges the trial court's award of $20,000 alimony *in solido* to wife for attorney fees.  The decision to award attorney fees to a party in a divorce proceeding is within the sound discretion of the trial court and will not be disturbed on appeal except upon a clear showing of abuse of that discretion.  *Aaron,* 909 S.W.2d at 411, *accord Storey,* 835 S.W.2d at 597.

Husband primarily contends that Wife was awarded sufficient assets to pay her own attorney fees.  The trial court awarded Wife 60% of the marital assets totaling approximately $132,000.  The trial court awarded Husband 40% of the assets totaling approximately $88,000.  The trial court also allocated to Husband all of the marital debts which totaled up to $31,000, not including Wife's attorney fee award.  The most significant debt was a note to Husband's grandfather

which Husband valued at $21,200 and Wife valued at $10,000. The difference in their respective valuations is due to a dispute as to whether Husband's grandfather had agreed to reduce the note to include principal only.

In her ruling, the trial judge said, "I am not one to award attorney's fees unnecessarily; I'm not one to award large amounts of attorney's fees generally . . . . In this case, however, I can't subscribe to that theory, . . ." We further note that the trial judge also considered the fact that Husband had used some of the marital assets to pay his individual attorney fees. This issue will be more fully developed later in this opinion. Given the circumstances which precipitated the award of attorney fees, we cannot say the trial court abused its discretion in awarding Wife $20,000 in attorney fees.

### III. Health Insurance Coverage

Husband's third issue is whether the trial court erred in ordering Husband to pay a portion of Wife's health insurance coverage. T.C.A. § 36-5-101(f)(1) reads as follows:

> The court may direct the acquisition or maintenance of health insurance covering each child of the marriage and may order either party to pay all, or each party to pay a pro rata share of, the health care costs not paid by insurance proceeds. The court may also direct a party to pay the premiums for insurance insuring the health care costs of the other party.

The statute gives the trial court broad discretion in determining whether to require one party to pay the *entire* health insurance premiums of the other party. In this particular case, the trial judge only required Husband to pay one half of Wife's insurance premium. We find no error.

### IV. Life Insurance Coverage

Husband alleges the trial court erred in requiring Husband to maintain a life insurance policy which exceeds the total amount of child support owed. Husband was ordered to pay $1,481

per month in child support until the youngest child, age 11 at the time of trial, reaches the age of 18. Husband argues that the total amount of child support due, i.e., $124,404, is well below the $300,000 amount of life insurance the trial court forced him to maintain to insure the payment of his child support obligation.

The applicable statute is T.C.A. § 36-5-101(g) which reads:

> The court may direct either or both parties to designate the other party and the children of the marriage as beneficiaries under any existing policies insuring the life of either party and maintenance of existing policies insuring the life of either party, or the purchase and maintenance of life insurance and designation of beneficiaries.

Husband does not cite us to any supporting authority for his contention. We read nothing in the statute and find nothing in the case law which forces the trial court to limit the amount of Husband's life insurance to the amount of child support ordered by the court. The court directed that the children were to be the irrevocable beneficiaries of this policy. Therefore, contrary to Husband's assertions, the death of Husband before the expiration of this policy would result in no windfall to Wife.

## V. The Division of Marital Property

"Trial courts have broad discretion in dividing the marital estate in a divorce case. Accordingly, their decisions are entitled to great weight on appeal, and are presumed to be correct unless the evidence preponderates otherwise." *Mondelli v. Howard,* 780 S.W.2d 769, 772 (Tenn. Ct. App. 1989) (citations omitted).

Husband challenges the trial court's 60/40 division of assets. Husband's first subissue under this category is that he alleges the trial court's division was in reality 64.22% to Wife and 35.77% to him. Husband's calculation is incorrect because it fails to account for approximately $30,000 he received from one-half of the sale of the marital residence. Once that amount is added to both Husband's and Wife's total assets, the percentage is very close to a 60/40 division. Our courts have clearly stated that Tenn. Code Ann. § 36-4-121 (1996), the statute which authorizes the

division of marital assets, does not require the division of property to be equal in order to be equitable. ***Ellis v. Ellis,*** 748 S.W.2d 424, 427 (Tenn. 1988). This first subissue is without merit.

Husband's second subissue involves the trial court's allocation of 100% of the marital debt to Husband. Our court in ***Mondelli, supra***, spoke at length about the factors which aid the trial court in the allocation of marital debt. The court said:

> Courts should apportion marital debts equitably in much the same way that they divide marital assets. When practicable, the debts should follow the assets they purchased.
>
> Courts should consider the following factors when they divide marital debts: (1) which party incurred the debt and the debt's purpose, (2) which party benefitted from incurring the debt, and (3) which party is best able to assume and repay the debt.

***Mondelli***, 780 S.W.2d at 773 (citations omitted). Furthermore, the ***Mondelli*** court refused to adopt a "mechanical approach" which would require the trial court's distribution of debt to mirror the same percentage the court used in the distribution of assets. ***Id***.

The record reveals that the trial court was thoroughly familiar with the principles which guide the allocation of marital debts. From our review, it appears the trial court properly allocated the debts to Husband. The largest marital debt, a note to Husband's grandfather, was for the benefit of both parties. However, given the dispute over the value of the note and Husband's higher earning capacity, it was proper for the trial court to assign this debt to Husband.

Husband also raises the issue that the trial court primarily used Wife's valuation of marital assets instead of utilizing his valuation. The underlying issue here is one of credibility. The trial court obviously found Wife to be the more credible witness and we think the record supports this finding. Furthermore, the trial court has broad discretion in matters of credibility with which appellate courts are hesitant to interfere. ***Randolph v. Randolph,*** 937 S.W.2d 815, 819 (Tenn. 1996).

Husband's third subissue charges the trial judge with improperly considering

Husband's use of a marital asset to pay personal debts. The asset at issue is an investment account which held approximately $63,000 at one time. The trial court ordered these funds to be deposited by Husband into a joint checking account to ensure that the funds would not be dissipated prior to trial. Instead, Husband deposited the funds into an individual checking account in his name only. With the court's permission, Husband spent a portion of these funds to retire a second mortgage on the marital residence and to pay joint credit card debt. However, approximately $4,000 of the funds were used to pay Husband's individual attorney fees and the remaining balance was also depleted prior to trial.

The trial court heard testimony from Husband as to why he had disobeyed the court's order by placing the funds into an individual account rather than a joint account. Part of Husband's justification related to his compliance with conflicting or confusing instructions from the court-appointed Divorce Referee. After weighing all the evidence, the trial judge elected not to find Husband in contempt. However, the trial judge did consider the dissipation of this marital asset when allocating the marital assets and the marital debt. In our view, this was within the trial court's discretion and the issue is without merit.

## VI. Attorney Fees on Appeal

Wife requests the court award her reasonable attorney fees on appeal. While Wife was successful in defending each issue Husband raised on appeal, we do not feel that an award of attorney fees is warranted under the circumstances. Costs in this cause on appeal are taxed to Husband for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)