IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 18, 2003

## JEANETTE SUE BROOKS v. CHARLES VIRGIL BROOKS

**Appeal from the Circuit Court for Sevier County**
**No. 2001-0767-I     Ben W. Hooper, II, Judge**

**Filed October 31, 2003**

**No. E2002-02458-COA-R3-CV**

This is a divorce case.  The trial court granted Jeanette Sue Brooks ("Wife") a divorce from Charles Virgil Brooks ("Husband"), divided the parties' marital property and debts, and awarded alimony to Wife in the amount of $150 per month.  Husband appeals the award of alimony and the division of the parties' debts.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

David B. Hill, Newport, Tennessee, for the appellant, Charles Virgil Brooks.

James W. Greenlee, Sevierville, Tennessee, for the appellee, Jeanette Sue Brooks.

**OPINION**

I.

Husband and Wife were originally married in 1971.  On July 8, 1993, they were granted a divorce.  Despite this, they continued to live together without interruption and were together when they remarried on November 12, 1998.

At the time of their second marriage, Wife worked part-time for a local motel, and Husband had two jobs, one of which was with the Sevier County School System.  Approximately one year after they remarried, Wife became disabled and was no longer able to work.

On October 23, 2001, Wife filed for divorce, alleging, *inter alia*, inappropriate marital conduct.  Husband answered, admitting that grounds for divorce existed.  He coupled his answer

with a counterclaim for divorce, premised upon several grounds, including inappropriate marital conduct.

The case was heard on May 13, 2002. A final judgment was entered June 4, 2002, dismissing Husband's counterclaim and granting Wife a divorce on the grounds of inappropriate marital conduct. The trial court found that the only marital property of the parties consisted of roughly a quarter-acre of real property in Sevier County and a 1990 Pontiac automobile. The court then awarded Wife all "real estate, separate and marital," as well as the Pontiac and a 1979 Ford truck "which [Husband] apparently gave to [Wife]." Husband was awarded all remaining personal property and automobiles; he was directed to pay the debt of the parties. Finally, the trial court ordered Husband to pay Wife alimony *in futuro* of $150 per month.

From this judgment, Husband appeals.

## II.

Our review of this non-jury case is *de novo* upon the record with a presumption of correctness as to the trial court's factual findings, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's conclusions of law are not accorded the same deference. ***Brumit v. Brumit***, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997).

## III.

The issue of alimony in this case causes us to focus on Tenn. Code Ann. § 36-5-101(d)(1)(E)(i)-(xii) (Supp. 2003), which provides, in pertinent part, as follows:

> (i) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;
>
> (ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>
> (iii) The duration of the marriage;
>
> (iv) The age and mental condition of each party;
>
> (v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(vii) The separate assets of each party, both real and personal, tangible and intangible;

(viii) The provisions made with regard to the marital property as defined in § 36-4-121;

(ix) The standard of living of the parties established during the marriage;

(x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

IV.

Husband first argues that the trial court erred in awarding alimony to Wife "based on the duration of the parties['] present marriage and the duration of a previous marriage of the parties."

In determining the propriety, nature, and amount of an alimony award, courts are to consider the statutory factors set forth in Tenn. Code Ann. § 36-5-101(d)(1)(E)(i)-(xii). "[T]here is no absolute formula for determining the amount of alimony." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995). The two most important factors in setting the amount of an alimony award are need and the ability to pay, with need being "the single most important factor." *Id.*, quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). Because the amount of alimony to be awarded is within the trial court's sound discretion in view of the particular circumstances of the case, appellate courts will not alter such awards absent an abuse of discretion. *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997).

In its final judgment, the trial court made the following findings with respect to alimony:

This is a case for support of [Wife] on a long term basis, because of her poor health and disability, the overall duration of the relationship

of over 31 years, five of which were while divorced, but they continued to live together during this time. The Court has considered the relative fault of the parties, because it is felt to be appropriate to do so in this case under all the facts and circumstances.

Husband asserts that the trial court improperly considered the entire length of the parties' relationship, which, so the argument goes, is in opposition to this Court's finding in *Flanagan v. Flanagan*, 656 S.W.2d 1 (Tenn. Ct. App. 1983). In *Flanagan*, we held that an award of alimony is dependent only upon the circumstances of the present marriage, and that previous marriages cannot be taken into consideration. *Id.* at 3. However, *Flanagan* is distinguishable from the case at bar in that the parties in that case did not continue to live together following their initial divorce. Indeed, the Flanagans were married a total of three times, and Mrs. Flanagan was married to someone else in between her second and third marriages to Mr. Flanagan. *Id.* at 1. By contrast, the record in the instant case reflects that Husband and Wife lived together both in and out of marriage continuously for some 31 years. Moreover, the trial court stated that it was considering "the overall duration of the *relationship*" of the parties, rather than the periods of their two marriages. (Emphasis added). This *long relationship together* is an appropriate factor to be considered in this case in weighing "the equities between the parties," as contemplated by Tenn. Code Ann. § 36-5-101(d)(1)(E)(xii). We find no error in the trial court's consideration of the fact that these parties lived together for some 31 years.

With respect to the propriety of the alimony award, we are mindful of the two critical factors – need and ability to pay. *See Aaron*, 909 S.W.2d at 410. Our review of the record indicates that Wife earns $309 per month in Social Security benefits, while Husband's net monthly income is $1598. As the trial court ordered Husband to pay the monthly mortgage payment of $430 on Wife's residence, as well as $150 in alimony, Wife will have the use or benefit of $889 per month. Of that $889, $459 is spendable income to be used for utilities and household expenses, clothing, transportation, and her other expenses. Subtracting the $430 mortgage payment and the $150 alimony payment, Husband will have the use of $1018 per month. Based upon Wife's need and Husband's ability to pay, we cannot say that the trial court abused its discretion in making this award.

V.

Husband next contends that the trial court erred in assigning to him full responsibility for the parties' debt, as some of the debt was separate, rather than marital, debt. We disagree with Husband's position on this matter.

Marital debt is subject to equitable division in the same manner as marital property. *See Cutsinger v. Cutsinger*, 917 S.W.2d 238, 243 (Tenn. Ct. App. 1995); *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989). "Marital debts are those debts incurred during the marriage for the joint benefit of the parties, . . . or those directly traceable to the acquisition of marital property." *Mondelli*, 780 S.W.2d at 773 (citations omitted). In dividing marital debts, courts should

consider the following factors: (1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt. *Id.*

In the instant case, the trial court ordered Husband to pay all of the parties' debt. This debt included a $64 monthly payment to Washington Mutual, a $100 monthly payment on the bankruptcy payment plan, and the $430 monthly mortgage payment on Wife's residence, for a total of $594. We construe Husband's argument to contend that some of this is separate debt, and as such, he should not be required to pay it. However, there is absolutely no indication in the record as to which part of this debt, if any, is indeed separate rather than marital debt.

With respect to the Washington Mutual debt, the record fails to establish the amount of the loan, the loan's outstanding balance, the purpose of the loan, or the date of origination of the loan. We only know that the monthly payments are $64. Wife testified at trial that the parties filed for Chapter 13 bankruptcy on November 13, 1998, which was the day after they were remarried. Other than the amount of the monthly payments, the record contains no other information on this Chapter 13 obligation. As to the mortgage debt, the parties jointly refinanced the mortgage in 1994 "to pay off bills that had been incurred and to put windows in the residence." Without more evidence, we cannot say that the trial court erred in classifying all of this debt as marital debt. The evidence before us does not preponderate against the trial court's implicit holding that all of the debt was marital in nature.

To the extent that Husband is arguing that the statement of the evidence is deficient, we note that, as the appellant, it was his responsibility to furnish a statement that would "convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." *See* Tenn. R. App. P. 24(c). If evidence was in fact presented to the trial court reflecting that some portion of the debt was separate in nature, Husband must take the blame for furnishing a record that fails to reflect this.

Turning to the ***Mondelli*** factors, the purpose of both the Chapter 13 obligation and the mortgage debt was to repay other debts and bills of the parties.[1] *See **Mondelli***, 780 S.W.2d at 773. In addition, the mortgage debt was used to make improvements to the parties' residence. *See id.* Both parties incurred the debt and both parties ostensibly benefitted from the debt. *See id.* Finally, based upon the disparity in the parties' income, Husband is clearly in a better position to repay the debt. *See id.* The monthly debt payment is $594. Wife's total monthly income, including alimony, is $459. Husband receives $1448 per month, after deduction of his $150 alimony payment. As the trial court found, "Wife has absolutely no way to pay any debts." Accordingly, we do not find that the evidence preponderates against the trial court's holding that it is equitable to require Husband to be responsible for these debts.

---

[1] In his brief, Husband does not take issue with the trial court's decision to burden him with the Washington Mutual debt.

## VI.

The judgment of the trial court is affirmed. This case is remanded to the trial court for collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellant, Charles Virgil Brooks.

_____
CHARLES D. SUSANO, JR., JUDGE