IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2013 Session

## JESSE R. MILTIER v. BANK OF AMERICA, N.A.

**Appeal from the Circuit Court for Carter County**
**No. C9814    Hon. Thomas J. Seeley, Jr., Judge**

_____

**No. E2012-00393-COA-R3-CV-FILED-JUNE 26, 2013**

_____

This appeal involves a dispute over an attorney's fee in a wrongful foreclosure case filed by Client against Bank of America. Client originally signed a contingency fee contract with Attorney, who later withdrew from the case. Client hired a new law firm to represent him and subsequently prevailed following a jury trial. Attorney filed suit, alleging that he was entitled to recover his original contingency fee because Client's behavior forced him to withdraw from representation. The trial court limited Attorney's recovery of fees pursuant to quantum meruit. Attorney appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ. joined.

Thomas E. Cowan, Jr., Elizabethton, Tennessee, Pro Se.

Jesse R. Miltier, III, Grand Junction, Colorado, Pro Se.

**OPINION**

**I. BACKGROUND**

Pursuant to a divorce decree, Jesse R. Miltier, III ("Client") retained his family home in Watauga, Tennessee. As relevant to this case, the property was secured by two promissory notes, one of which was held by Bank of America ("BOA"). In 2001, Client moved to Palisade, Colorado but retained ownership of the Tennessee property. In 2004, Client

experienced unforeseen financial difficulties and was unable to remit his mortgage payments in February, March, and April 2004. In May 2004, he spoke with a BOA representative and informed them that he had mailed a $1,000 payment. The representative advised him that the payment would "hold [] off" the filing of a foreclosure notice and could serve as a down payment for a new repayment plan that might assist him with his financial difficulties.

Despite Client's conversation with the representative, BOA returned the $1,000 payment, instituted foreclosure proceedings, and referred the matter to its foreclosure counsel in Atlanta, Georgia. Thereafter, Client learned that his property was scheduled for a foreclosure sale and that if he did not remit $6,426.54 to BOA, his property would be sold on July 8, 2004. Client sought help from his mother, who mailed a $7,000 cashier's check to one of BOA's offices in New York on July 2, 2004. The check was received the following day and deposited on July 7, 2004. Mr. Miltier confirmed the receipt of his payment and was told that his account was current. Unbeknownst to him, his property was sold at a foreclosure sale while he was working in Colorado. He learned of the sale after his neighbor informed him that several vans were parked on his property.

On October 15, 2004, Mr. Miltier retained attorneys Thomas E. Cowan, Jr. and Collins Landstreet (collectively "Attorneys") to pursue a claim against BOA for the wrongful foreclosure of his property. He signed a contract with Attorneys that provided for a fee of one-third of any amount he recovered from BOA. Attorneys filed a complaint and participated in discovery for several months before withdrawing from their representation on June 5, 2006. The court granted their request for a lien for attorney fees. Thereafter, Mr. Miltier retained a new law firm to pursue his claim against BOA. Approximately three years later, a jury awarded him a substantial judgment, which was reduced by the trial court to $616,282.26.

Attorneys sought recovery of their fees. Mr. Landstreet filed a detailed accounting of the time he spent on the case, totaling in excess of 50 hours. Likewise, Mr. Cowan filed an accounting of the time he spent on the case, totaling in excess of 247 hours. Attorneys sought recovery of their contingent fee pursuant to the contract.

A hearing was held at which Client and Attorneys testified. Client testified that he moved to Colorado in July 2001 and that he returned to Tennessee approximately four times each year to visit family and attend to the Tennessee property. He related that the property was encumbered by two mortgages and that he eventually defaulted on the BOA mortgage because of financial difficulties. He conceded that he signed a contract with Attorneys that provided for a contingent fee of a third of his recovery even if he discharged them and hired a substitute or replacement attorney.

-2-

Client testified that he first became concerned with Attorneys when he realized his complaint was not immediately filed. He recalled that Mr. Cowan told him that they were in the discovery phase but that he later learned that Attorneys had not completed any discovery. He stated that he called Attorneys at least once a month but never received direct responses from them. He complained that they did not consult him in setting the amount requested for compensatory damages and generally did not discuss the filing of the complaint with him. He claimed that he traveled to Tennessee on several occasions and was available for depositions but that Attorneys never scheduled anything with BOA. He stated that Attorneys consistently pressured him to accept the settlement offer and would not talk to him about the details of his case.

Client testified that Mr. Cowan often made "flippant remarks" concerning the scheduling of his deposition and told him that BOA could travel to Colorado to conduct the deposition. Despite Mr. Cowan's remarks, he traveled to Tennessee in April 2006 to attend a deposition and assist with discovery. He related that he worked with Mr. Landstreet in responding to BOA's interrogatories and that he also brought extensive documentation with him for Attorneys to review and submit to BOA. He was later informed that BOA cancelled the deposition because they needed additional documentation and that Mr. Cowan would be out of the office for the remainder of the week. He stated that he began to tape-record his conversations with Attorneys because he felt that they were not adequately representing him.[1]

Client recalled that on May 26, 2006, he visited the office with several of his family members. He claimed that he came to the office with the intent to schedule his mother's deposition. He related that his mother was in poor health. He stated that Mr. Cowan belittled him in front of his family because he refused to accept the latest settlement offer. He recalled telling Mr. Cowan that he believed that Mr. Cowan had lied to him five or six times. He stated that Mr. Cowan immediately withdrew from the case after he suggested that Mr. Cowan lied to him. He related that he never called Mr. Landstreet a liar and that Mr. Landstreet was "in and out" of the room during his meeting with Mr. Cowan.

Mr. Cowan asserted that Client would not acknowledge any fault for the wrongful foreclosure of the property. He related that Client's mother mailed the payment to the wrong office and that Client later failed to ensure that the appropriate office received the payment in time to halt the foreclosure proceedings. He claimed that Client simply wanted money and refused any negotiations for the return of the property.

Mr. Cowan testified that Client had tape-recorded a large number of conversations with BOA and then later transcribed those recordings for the benefit of the lawsuit. After

---

[1]These recordings were played for the trial court.

receiving the transcriptions, he and Mr. Landstreet drafted an extremely detailed complaint that recounted several of the conversations. They were able to set the case for trial several months after he received BOA's answer to the complaint. He recalled that after he set the case for trial, BOA filed a motion for a continuance, served interrogatories and requests for production of documents, and scheduled a deposition with Client. He related that the request for a continuance was granted over his objection, that he and Mr. Landstreet responded to the interrogatories and produced documents with Client's assistance, and that the first deposition was scheduled for April 14, 2006. He claimed that Client failed to submit all of the documentation that BOA had requested prior to the deposition. BOA then attempted to reschedule Client's deposition for June 5, 2006, but Client refused.

Mr. Cowan testified that Client visited his office in May 2006 with several family members. He recalled advising Client to make himself available in the forum in which they had filed suit. Client responded by pointing his finger at him and stating, "Tom, you lied to me. You told me [BOA] had to come to Colorado to take my deposition or do it by telephone." He claimed that at that point, he withdrew from his representation of Client because he did not believe he could continue in a fiduciary relationship with a client who had called him a liar. He admitted that he had advised Client that BOA *could* travel to Colorado to conduct his deposition but that BOA wanted to conduct the deposition in Tennessee. He asserted that the conversation Client referred to occurred before the deposition was scheduled in April with Client's consent.

Mr. Cowan conceded that he had repeatedly advised Client regarding his settlement options and that he believed that Client received more than Client was entitled to receive at trial. He opined that once the fee dispute was resolved, Client would receive even more money. He related that Client received such a large sum at trial because Client claimed the development of a mental illness over the stress of the situation. He doubted that Client had truly developed a mental illness and believed that Client was simply opportunistic.

Mr. Cowan testified that while he kept some record of his time throughout his representation of Client, he no longer had access to his original notes. He explained that he did not keep detailed time records because Client agreed to a contingent fee. He generated his fee request by reviewing his documentation of the case. He stated that if he received his fee pursuant to an hourly rate, he believed he was entitled to $61,000, representing 247 hours at a rate of $250 per hour. He conceded that he was no longer practicing law and that his license had been suspended as a result of a felony conviction for tax evasion.

Mr. Landstreet testified that Client was "very difficult" and often felt "victimized." He opined that he and Mr. Cowan "put up with a lot" in order to represent Client. He acknowledged that he was concerned about Client's comparative fault in the matter but that

-4-

he was willing to represent Client because of the interesting nature of the case. He recalled that Client failed to bring sufficient documentation with him to fully respond to BOA's requests and that BOA had to reschedule the deposition because of the lack of documentation. He claimed that it was "hard to get" documents from Client.

Mr. Landstreet related that when they withdrew from representation, the case was almost ready for trial. He recalled that in May 2006, Client and his family visited the office, where he and Mr. Cowan advised Client of the necessity of making himself available for a deposition with BOA. He claimed that Client called him a liar. He stated that he was "shocked" and could not see how he could continue representing Client.

Mr. Landstreet claimed that he and Mr. Cowan were entitled to the benefit of the contract because Client was at fault for the breach of the fiduciary relationship. He conceded that he had not kept a time sheet and that he only met with Client a few times given their long-distance representation of him. He believed that he submitted a very conservative accounting of the time he spent on the case. He acknowledged that in the 17 months of their representation, he and Mr. Cowan had only filed a complaint, a request for admissions, and answers to BOA's interrogatories. He related that he likely spent more time on this case than other cases because he focused on the interesting details of the case. He could not comment on whether Mr. Cowan actually spent 247 hours on the case but stated that he believed his time estimate of more than 50 hours was conservative.

Following the presentation of the above evidence, the trial court refused to enforce the provisions of the contract requiring a contingent fee. The court noted that other than filing the initial complaint and a few other documents, Attorneys did not contribute to the result in the case. The court found that awarding a contingent fee would be unconscionable, given that their limited effort "did very little to bring about the final result" in the case. The court noted that Attorneys withdrew from their representation and were never discharged by Client. Having precluded recovery pursuant to the contract, the court considered their request for fees pursuant to quantum meruit. The court found Mr. Cowan's claim that he spent 247 hours on the case was not credible. Instead, the court credited each attorney with 50 hours of work and set Mr. Cowan's fee at $200 per hour and Mr. Landstreet's fee at $150 per hour. In total, the court awarded Mr. Cowan a $10,000 fee and Mr. Landstreet a $7,500 fee. Mr. Cowan timely appealed the court's decision.

## II.  ISSUES

We consolidate and restate the issue raised on appeal as follows:

A.  Whether the trial court erred in precluding recovery of attorney fees pursuant to the terms of the contingent fee contract.

B.  Whether Client is entitled to attorney fees and costs on appeal.

## III.  STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them.  *See* Tenn. R. App. P. 13(d).  The trial court's conclusions of law are subject to a de novo review with no presumption of correctness.  *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

## IV.  DISCUSSION

### A.

Mr. Cowan asserts that the trial court erred in refusing to award attorney fees pursuant to the terms of the contract.  He contends that Client's behavior forced him to withdraw and that the court failed to address the significance of Client's behavior and its affect on the attorney-client relationship.  Citing *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996), Mr. Cowan claims that Client constructively discharged him without cause.  Client responds that the trial court did not err in denying recovery of fees pursuant to the contract. He contends that Mr. Cowan repeatedly lied to him throughout the attorney-client relationship, did not contribute to the judgment he ultimately received, and should not have been awarded any fee for such a limited representation.

The record reflects that the attorney-client relationship deteriorated throughout Mr. Cowan's representation of Client and that Mr. Cowan chose to withdraw from his representation.  We reject Mr. Cowan's claim that he was constructively discharged.  In *Campbell*, the issue of the constructive discharge of an employee was raised in the context of a hostile work environment claim in a typical employer-employee relationship.  919

S.W.2d at 34. We acknowledge that an attorney-client relationship is analogous with an employer-employee relationship and that Client questioned Mr. Cowan's credibility, which likely contributed to the deterioration of the relationship. However, this court can hardly analogize the heated exchange at issue here with cases filed pursuant to the Federal Civil Rights Act or the Tennessee Human Rights Act. The facts presented in *Campbell* and other hostile work environment cases are simply inapposite to the facts of this case.

Moreover, Mr. Cowan readily admits that he *immediately* withdrew from his representation of Client when his credibility was questioned and that he did not attempt to discuss the matter further with Client, who simply accepted the withdrawal. Having withdrawn from his representation of Client, Mr. Cowan was limited in his recovery of fees pursuant to quantum meruit. *Estate of Fetterman v. King*, No. E2003-02081-COA-R3-CV, 2004 WL 1906449, at *5 (Tenn. Ct. App. August 26, 2004) (citation omitted). Accordingly, we conclude that the trial court did not err in calculating Mr. Cowan's fees pursuant to quantum merit.

Client asserts that Mr. Cowan was not entitled to recoup any amount in attorney fees given the limited representation that he received from Mr. Cowan. Recovery of attorney fees pursuant to quantum meruit is limited to the "'actual value'" of the services rendered. *Gupton v. Davis*, No. E2011-02215-COA-R3-CV, 2012 WL 4358184, at *10 (Tenn. Ct. App. Sept. 25, 2012) (quoting *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995)). Here, Mr. Cowan's contribution by his representation was admittedly limited and of short duration. However, we cannot hold that Mr. Cowan's services were not of any value to Client. Client may not have filed a timely claim against BOA without Mr. Cowan's assistance. With these considerations in mind, we affirm the trial court's attorney fee award.

B.

Client asserts he is entitled to damages in the form of attorney fees and travel expenses. Tennessee Code Annotated section 27-1-122 provides for an award of damages, including attorney fees, when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). An appellate court's decision on this issue is discretionary, and this court is generally reluctant to award such damages because we do not want to discourage legitimate appeals. *Whalum v. Marshall*, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006). Following our review, we respectfully deny Client's request for attorney fees and his additional request for travel expenses.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Thomas E. Cowan, Jr..


_____
JOHN W. McCLARTY, JUDGE