IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 16, 2013 Session

## RAMON WILLIAMS v. DANA RANDOLPH

**Appeal from the Juvenile Court for Bradley County**
**No. J09249      Daniel Swafford, Judge**

---

### No. E2012-02110-COA-R3-CV-FILED-JULY 16, 2013

---

This is an appeal from the trial court's final order modifying the visitation schedule as required upon remand from a prior appeal. *See In re Iyana R.W.*, No. E2010-00114-COA-R3-JV, 2011 WL 2348458 (Tenn. Ct. App. 2011). The trial court denied the father's attempt to modify custody of the minor child and ordered the case transferred to the Davidson County Juvenile Court as the more convenient forum for any further proceedings. The father appeals. We affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed in Part and Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

Phillip M. Jacobs, Cleveland, Tennessee, for the appellant, Ramon Williams.

Jon S. Jablonski, Nashville, Tennessee, for the appellee, Dana Randolph.

**OPINION**

**I. BACKGROUND**

Ramon Williams ("Father") and Dana Randolph ("Mother") were in a relationship that resulted in the birth of a daughter ("the Child"). Father is a system engineer with Tennessee Valley Authority. He lives in Cleveland, Tennessee. Mother works in information technology for Ranstad Technologies. She also has a business repairing computers and creating web sites. Mother lives in Nashville, Tennessee, with her mother. As noted in our prior opinion, the couple never married and interactions between the pair have been

contentious.

On June 8, 2011, we reversed an order of the trial court granting a change of custody and naming Father as the primary residential parent. We remanded the case to the trial court for a hearing on visitation. After conducting arguments on July 23, 2012,[1] the trial court made the following findings:

On February 24, 2009, Father filed a petition in the Juvenile Court of Davidson County, Tennessee asking the Court to deny Mother's request to move to Colorado with their child, Iyana, and that he ". . . be granted primary residential parent of the minor child."

After the case was transferred to Bradley County, Tennessee, and a hearing on that Petition in November of 2009, the Juvenile Court of Bradley County found a material change of circumstances and also found that it was in [the Child]'s best interest to change custody from Mother to Father. That ruling was appealed to the Court of Appeals, which reversed the change of custody awarded by the Juvenile Court of Bradley County and remanded the case for hearing to set visitation between Father and [the Child].

During the pendency of the appeal, Mother returned to Tennessee, and advised the Juvenile Court for Bradley County in writing that she had returned from Colorado and had now relocated to Tennessee. Subsequent to her return to Tennessee Mother has primarily lived with her mother at 2305 S. Grafton Court in Nashville, Tennessee. Since the [C]hild was returned to Mother's legal custody by Order of the Court of Appeals on June 8, 2011, [the Child] has resided with her mother and/or her maternal grandmother in Nashville, Tennessee. On two occasions after returning from Colorado, for a total of six months, Mother has lived in an apartment apart from her mother, the [C]hild's maternal grandmother. One of those occasions was prior to June 8, 2011. On the other, more recent occasion, [the Child] has stayed with her grandmother at her grandmother's house from time to time.

On those two occasions that Mother moved from her mother's house, the moves were the results of disagreement between Mother and her mother. Prior to the return of the [C]hild to Mother by the Court of Appeals, one disagreement resulted in the police being called to the residence. On one other occasion when [the Child] did not want to leave her grandmother's house with

---

[1]The Child was 13 years old at the time of the hearing.

Mother, the police were called to intervene.[2]

At the present time, Mother has just moved back to her mother's residence from the apartment she had rented under a three month lease at the Mission of Brentwood Apartments.

[the Child] attended sixth grade in Cleveland, Tennessee[,] before returning to live with her mother in June of 2011. During that time the [C]hild missed four days of school. After returning to live with her mother in June of 2011, [the Child] attended seventh grade at Lighthouse Christian School, a private school in Nashville, Tennessee. The [C]hild missed four days of school during her seventh grade year and was promoted to eighth grade.

After the [C]hild was returned to Mother's custody in June 2011, Father sent no support to Mother for the support of [the Child] until November 9, 2011, with the exception of two, two hundred dollar ($200.00) payments, on both of which he stopped payment. Meanwhile, during that time period, child support services on Father's behalf continued in their attempts to enforce Mother's child support obligation, which necessitated Mother's request for administrative hearing to stop the wage assignment, which had been issued by child support services. After an administrative hearing on January 9, 2012, the hearing officer, Althea Creel, issued a ruling that Mother had overpaid her child support obligation, which had existed until June 8, 2011, by $41.58 and Ordered Father to repay that $41.58 within ten (10) days of the order. That amount remains unpaid. This Court also entered an Order on March 2, 2012, which ruled that Mother had now overpaid her child support obligation in the total amount of $144.78, which amount remains unpaid. In addition, Mother was awarded $1,787.78 for her attorney fees by Davidson County Magistrate Scott Rosenberg by Order signed by Magistrate Rosenberg on November 28, 2006 and entered by the Court on December 28, 2006, which amount has never been paid by Father. Although Father made an assertion that the Order had been set aside by Magistrate Rosenberg, he could not refer the Court to such an Order substantiating that claim, and the Court could not locate any such Order. Since June 2011, Mother's mother has helped Mother financially due to expenses associated with [the Child] and the ongoing litigation.

Since custody of [the Child] was returned to Mother, Father exercised no visitation with his daughter from June 8, 2011, until the entry of an Agreed

_____

[2]The Child testified regarding an incident where two girlfriends got into a fight over Father.

Order on August 31, 2011, which set his visitation for the Labor Day Holiday and beginning the weekend following Labor Day, he began exercising visitation on an every other weekend basis to coincide with his visitation with a son from another relationship, who also resided in Nashville. Their alternating weekend visitations occurred in Nashville, when Father would drive from Cleveland to Nashville for those visits. Father kept almost all of those scheduled visitations although there were a few occasions when his mother would pick up [the Child] to begin the visit and would return [the Child] at the end of the visit.

Since a hearing on May 30, 2012, Father and Mother had been exercising parenting time with the [C]hild on a two week alternating schedule, with an exception when Father allowed the maternal grandmother to take the [C]hild to Las Vegas for a family reunion. Mother did not attend that reunion as she had to stay in Nashville to work. . . .

Father's house was damaged by a mudslide in March 2012, which damaged the room in which [the Child] stays when she is with her father in Cleveland. All the furniture was destroyed except for her desk. The room remains unrepaired as the insurance coverage excluded damages due to a mudslide. During the summer of 2012 visitation, [the Child] and her half-brother slept on an air mattress on the living room floor. According to Father, this was at the children's request so that they could play their Wii game and not disturb their neighbors.

The [C]hild testified that she enjoys living with her grandmother,[3] but her preference is to live with her father.[4] She said that she fit in "better" at the school in Cleveland than at Lighthouse Christian School, but that she liked Lighthouse Christian School, which was harder than Cleveland Middle School. When with her father, [the Child] rides the bus to school each morning and home from school each afternoon, unless she participates in the "library" program, which Father describes as an after school program.

Father offered no visitation proposal for the remand hearing saying only that

---

[3]The grandmother noted that when the Child returned from living with Father for a couple of years she was "mouthy," "talk[ed] back a lot," and "was just disrespectful and basically wouldn't listen to her [M]other, period."

[4]The Child testified that Mother is "all in the Lord and stuff" and argues with the grandmother.

he has requested custody of [the Child], and had not considered a visitation proposal with her. Mother's visitation proposal was a variation of the visitation that was ordered by Magistrate Rosenberg.

(Original footnotes omitted.). The trial court found that the pleadings offered by Father at the hearing failed to offer proof of a material change of circumstances since the Child was returned to Mother on June 8, 2011, and dismissed Father's request to modify the permanent parenting plan. A notice of appeal was timely filed.

## II. ISSUES

The following issues have been raised on appeal:

1. Did the trial court err in failing to consider the facts occurring since the December 16, 2009, order entered by the trial court, which was the subject of the first appeal between Mother and Father?

2. Did the trial court err in failing to grant Father primary residential custody of the Child, based upon change of circumstances and the Child's preference?

3. Did the trial court err in ordering the matter be transferred back to the Davidson County Juvenile Court?

4. Did the trial court err in failing to award Mother reasonable fees?

## III. STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

In matters of child custody, trial courts are vested with broad discretion, and appellate

courts will not interfere with the trial court's decision except upon a showing of erroneous exercise of that discretion. *See Whitaker v. Whitaker*, 957 S.W.2d 834, 836–37 (Tenn. Ct. App. 1997). "'Because [c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings,'" appellate courts "are reluctant to second-guess a trial court's decisions.'" *Hyde v. Amanda Bradley*, No. M2009–02117–COA–R3–JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct.12, 2010) (quoting *Johnson v. Johnson*, 169 S.W.3d 640, 645 (Tenn. Ct. App. 2004)).

## IV. DISCUSSION

### A.

The trial court limited testimony and evidence to the time period after June 8, 2011, the date on which our order was entered on the prior appeal and custody was returned to Mother. Father argues the relevant time frame started on December 16, 2009, at which time the trial court's order in the first appeal was entered.

We have recognized that the continuing supervision of the welfare of the minor child must be left to the trial judge pending an appeal. *In re E.J.M.*, 259 S.W.3d 124, 135 (Tenn. Ct. App. 2007) (citing *Mittwede v. Mittwede*, 490 S.W.2d 534, 536 (Tenn. Ct. App. 1969)). In this matter, since Father had custody of the Child until our decision to reverse, no reason existed for him to seek any action in the trial court during that time frame. Thus, despite the fact that changes in conditions and circumstances relating to the welfare of a child can occur at any time, no review has been taken of any relevant evidence from those 18 months the matter was pending on appeal. Accordingly, we agree with Father that the relevant time frame for the trial court's consideration started on December 16, 2009. To the extent that the trial court held that it could not consider testimony and evidence between December 16, 2009, to June 8, 2011, the holding is reversed.

### B.

Mother has moved back to Davidson County. The Child, Mother, and all of the Child's family with the exception of Father reside in the Nashville area. The Child goes to school in Nashville. A trial court abuses its discretion when it applies "an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The evidence supports the determination of the trial court that it is logical "that this case should be transferred back to the Davidson County Juvenile Court as the more convenient forum to

determine future issues as they may arise." Accordingly, there was no abuse of discretion for the trial court to transfer this matter to Davidson County.

As we must remand the case for the trial court to reconsider the facts since the order of December 16, 2009, all other remaining issues raised on appeal are pretermitted.

## V. CONCLUSION

The decision of the trial court to not consider testimony and evidence between December 16, 2009, to June 8, 2011, is reversed. The decision to transfer the matter to Davidson County is affirmed. The cause is remanded to the trial court with directions to transfer it to the Juvenile Court of Davidson County to conduct further proceedings consistent with this opinion. Costs of the appeal are assessed one-half to the appellant, Ramon Williams, and one-half to the appellee, Dana Randolph.

_____
JOHN W. McCLARTY, JUDGE