IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 20, 2004 Session

## DEBORAH KAY PARKER HOXIT OHME v. FREDERICK HERMAN OHME, IV

Appeal from the Chancery Court for Hawkins County
No. 14955    Thomas R. Frierson, II, Chancellor

No. E2004-00211-COA-R3-CV - FILED JANUARY 28, 2005

This is a divorce case. The trial court granted Deborah Kay Parker Hoxit Ohme ("Wife") a divorce from Frederick Herman Ohme, IV ("Husband"), divided the parties' marital property and debts, and awarded Wife transitional alimony of $500 per month. In addition, the court approved Wife's parenting plan, in which she was designated as the primary residential parent of the parties' child, and ordered Husband to pay child support of $854 per month. Husband appeals the granting of the divorce to Wife, the division of debt, the award of alimony, and the trial court's decree regarding responsibility for transporting the parties' child to and from visitation. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Richard A. Spivey, Kingsport, Tennessee, for the appellant, Frederick Herman Ohme, IV.

John P. Chiles, Kingsport, Tennessee, and Thomas F. Bloom, Nashville, Tennessee, for the appellee, Deborah Kay Parker Hoxit Ohme.

## OPINION

I.

Husband and Wife were married on November 1, 1991. At the time of their marriage, Husband was employed by the federal bureau of prisons in California and Wife worked on a military base. In 1995, Wife became pregnant with the parties' only child, Parker, who was born in February, 1996. Upon learning she was pregnant, Wife stopped working due to health concerns during the pregnancy; she did not return to work after the birth, choosing instead to stay home with the child.

In 2001, Husband was transferred to a prison in Lee County, Virginia, precipitating the parties' move to Church Hill, Tennessee. Wife testified that she began to notice a change in Husband shortly after the move, stating that he became distant and would stay out late drinking with his co-workers. According to Wife, Husband abruptly informed her in mid-April, 2002, that he no longer loved her and did not want to be married anymore. He then moved out of the parties' home.

On April 30, 2002, Wife filed for divorce, alleging that Husband had engaged in inappropriate marital conduct. In addition, Wife requested, *inter alia*, that the court name her as primary residential custodian of the parties' child, adopt her proposed parenting plan, and award child support in accordance with the child support guidelines. Wife also sought an equitable division of the parties' marital property, and she requested both alimony *pendente lite* and permanent alimony, as well as her attorney's fees.

On May 17, 2002, Husband filed motions objecting to Wife's parenting plan, as well as her request for temporary alimony. On the same day, the trial court ordered Husband to pay temporary alimony to Wife in the amount of $1,631.60 per month. The following month, Husband filed a motion for a reduction in his alimony obligation, and filed an answer and counterclaim for divorce, alleging, *inter alia*, inappropriate marital conduct on the part of Wife.

The trial court entered a *pendente lite* order on July 25, 2002, in which Husband was ordered to pay child support of $869 per month. The trial court modified his temporary alimony obligation by reducing it to $750 per month and awarded Wife $1,500 for Husband's failure to pay alimony in May and June, 2002.

The case was heard on November 17, 2003. A final judgment was entered on January 13, 2004, granting Wife a divorce on the ground of inappropriate marital conduct. The court approved Wife's parenting plan, designated her as primary residential parent of the child, and ordered Husband to pay child support of $854 per month. Wife was awarded one-half of Husband's retirement benefits accumulated during the marriage and transitional alimony of $500 per month for six years or until her remarriage. The trial court divided the parties' marital property and marital debt and ordered Husband to maintain Wife's health insurance for 36 months. Finally, the court ordered Husband to pay $2,500 of the fee of Wife's attorney.

From this judgment, Husband appeals.

II.

Our review of this non-jury case is *de novo* upon the record with a presumption of correctness as to the trial court's factual findings, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's conclusions of law are not accorded the same deference. **Brumit v. Brumit**, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997).

III.

Husband raises four issues for our review: (1) whether the trial court erred in awarding Wife the divorce rather than simply declaring the parties divorced; (2) whether the trial court erred in awarding most of the marital debt to Husband; (3) whether the trial court erred in awarding alimony to Wife; and (4) whether the trial court erred in giving Husband sole responsibility for the transportation of the parties' child for visitation purposes. We will address each of these issues in turn.

A.

Husband first contends that the trial court erred in awarding Wife a divorce on the ground of inappropriate marital conduct. Instead, he asserts, the trial court should have simply declared the parties divorced, since he claims that both of them were guilty of inappropriate marital conduct.

Tenn. Code Ann. § 36-4-101 (2001) lists the grounds for divorce in Tennessee, one of which is inappropriate marital conduct. *See* § 36-4-101(11). Tenn. Code Ann. § 36-4-129(b) (2001) states that, once a party proves the existence of a ground for divorce, the trial court may either grant the divorce to the party who is less at fault, or, if the proof shows that both parties are entitled to a divorce, it may declare the parties divorced. When deciding whether to grant a divorce on the ground of inappropriate marital conduct, the trial court's assessment of witness credibility is extremely important, and such a decision based upon witness credibility "should not be overturned unless the clear preponderance of the evidence is to the contrary." *Newberry v. Newberry*, 493 S.W.2d 99, 101 (Tenn. Ct. App. 1973) (citation omitted). Even when there is evidence "that both parties contributed to the downfall of [the] marriage," if the trial court finds that one party bears more of the blame, it is appropriate to award the divorce to the other party. *Eldridge v. Eldridge*, 137 S.W.3d 1, 24 (Tenn. Ct. App. 2002).

In the instant case, the trial court did not make any specific findings of fact with respect to the ground for divorce; rather, the court, in its memorandum opinion, simply concluded that Wife "has carried her burden of proof of establishing by a preponderance of the evidence that [Husband] has committed inappropriate marital conduct" and granted her an absolute divorce on that basis. However, even without specific factual findings, it is clear that the trial court relied upon Wife's testimony in making its decision. While both parties testified as to the alleged inappropriate conduct of the other, the trial court, in assessing the credibility of Wife and Husband, apparently found Wife's testimony to be more credible and thus found that Husband had been guilty of inappropriate marital conduct. Wife testified at trial that Husband began to change shortly after the parties moved to Tennessee – that he began staying out late at night drinking with co-workers and that he became increasingly cold and distant. She stated that he ultimately informed her that he no longer loved her and he abruptly moved out of the parties' home. Based upon this testimony and the trial court's implicit finding of Wife's credibility, we cannot say that the evidence preponderates against the trial court's decision to award the divorce to Wife on the basis of Husband's inappropriate marital conduct.

B.

Husband next asserts that the trial court erred in awarding most of the marital debt to him. We disagree.

The Supreme Court has recently defined marital debt as "all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing." *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). Upon determining the extent of the marital debts, the trial court should consider the following factors in making an equitable distribution of the debt: (1) the party who incurred the debt; (2) the debt's purpose; (3) the party who benefitted from the debt; and (4) the party who is in the better position to repay the debt. *Id.* at 812-13 (citing *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989)). "When there are few marital assets but a considerable amount of marital debt, a trial court should . . . consider awarding a disadvantaged spouse a lesser amount of marital debt." *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

The proof at trial showed that the parties had marital debt totaling approximately $37,408. By contrast, the parties owned no real property and had few marital assets. The trial court awarded each party the items of personal property in the respective parties' possession and noted that the parties had stipulated that Wife would receive half the value of Husband's retirement benefits. While the trial court found that Husband earned over $66,000 per year, Wife has been unemployed since 1995 and, due to health concerns, is unlikely to be able to return to work.

Accordingly, the trial court ordered Wife to pay debts owed to American General Finance and Ford Motor Credit Company, as well as all of her outstanding medical expenses. These debts totaled approximately $9,624. The trial court made Husband responsible for all other marital indebtedness, which totaled approximately $27,784. Given the fact that Husband has far greater income potential than Wife, and thus is clearly in a better position to repay the debt, we cannot say that the evidence preponderates against the trial court's finding that Husband should be responsible for 75% of the marital debt.

C.

Next, Husband contends that the trial court erred in awarding alimony to Wife. Specifically, Husband argues that, in spite of the opinion of Wife's physician to the contrary, Wife has been employed in the past and is capable of working again in the future. Therefore, Husband asserts, Wife does not have a true need for alimony.

In determining the propriety, nature, and amount of an alimony award, courts are to consider the statutory factors enumerated in Tenn. Code Ann. § 36-5-101(d)(1)(E)(i)-(xii). "[T]here is no absolute formula for determining the amount of alimony." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995). The two most important factors in setting the amount of an alimony award are need and the ability to pay, with need being "the single most important factor." *Id.*, (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). Because the amount of alimony to be

awarded is within the trial court's sound discretion in view of the particular circumstances of the case, appellate courts will not alter such awards absent an abuse of discretion. *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997) (citation omitted).

In its memorandum opinion, the trial court made the following findings with respect to alimony:

> [Wife] presently maintains a diagnosis of "major depression, recurrent, superimposed on dysthymia, anxiety disorder, NOS, and a passive aggressive personality." In the opinion of Mr. Ronald S. Smith, M.D., [Wife] presently is incapable of functioning in gainful employment. [Wife] suffers from fibromyalgia and is currently prescribed numerous medications for pain and depression. [Wife] has not maintained gainful employment since 1995. The evidence preponderates in favor of a finding that for [Wife,] economic rehabilitation is not feasible and long term support is necessary. As rehabilitative support and maintenance is inappropriate, this Court concludes that [Wife] is entitled to long term spousal support.
>
> As one component of spousal support, this Court directs that [Husband] shall maintain health care insurance coverage for [Wife] through his federal employee's health benefits (FEHB) program for a period of 36 months following the entry of the Final Judgment of Divorce. Further, [Husband] shall pay to [Wife] periodic spousal support in the amount of $500.00 per month for a period of 6 years following the divorce or until [Wife's] remarriage.
>
> [Wife] has requested that [Husband] be responsible for payment of her attorney's fees. . . . The Court determines that under the circumstances of this case, [Wife] will not be vested with adequate assets for her needs and payment of all of her attorney's fees. Therefore, an award of attorney's fees in the amount of $2,500.00 is appropriate in this case.

(Internal footnotes omitted).

Husband offered no expert testimony to contradict the opinion of Wife's physician regarding her inability to work. Instead, Husband merely opines in his brief that Wife has been gainfully employed in the past and that the trial court erred in finding that she "was not able to procure gainful employment." In the alternative, Husband argues that if Wife is truly disabled, she should be required to apply for disability benefits rather than forcing Husband to provide her with alimony and health insurance.

Our review of the record indicates that Husband earns a gross monthly income of $5,576, whereas Wife – aside from the temporary alimony she was receiving prior to the divorce – receives only $397 per month in alimony from a previous marriage, which is sent on a sporadic basis. Accordingly, Wife clearly has a need for support and Husband has the ability to pay. *See Aaron*, 909 S.W.2d at 410. Further, based upon the uncontroverted expert opinion of Wife's physician to the effect that Wife is presently unable to work, rehabilitative alimony is not feasible. We therefore find no error in the trial court's decision to award Wife transitional alimony of $500 per month for six years or until her remarriage. In addition, the evidence does not preponderate against the trial court's decision to order Husband to maintain Wife's health insurance and to pay $2,500 toward the fees of Wife's attorney, given the disparity in the parties' relative income.

### D.

Finally, Husband contends that the trial court erred in holding him solely responsible for transporting the parties' child to and from visitation. We disagree.

"Assigning travel expenses for visitation is an issue on which the relative financial resources of the parties may be considered." *Bowers v. Bowers*, 956 S.W.2d 496, 499-500 (Tenn. Ct. App. 1997) (citing *Dodd v. Dodd*, 737 S.W.2d 286, 292 (Tenn. Ct. App. 1987); *Reznicek v. Reznicek*, 1991 WL 156407, at *5 (Tenn. Ct. App. W.S., filed August 19, 1991)). As with all matters concerning custody and visitation, trial courts are vested with broad discretion in making determinations regarding transportation.

In the instant case, the trial court found that Wife did not have an automobile; she was forced to borrow a neighbor's car when necessary. Accordingly, the trial court determined that Husband would be responsible for transporting the child to and from his scheduled visitation. Moreover, due to Husband's vastly superior financial situation, he is certainly in a better position to bear the costs associated with transporting the child. As such, we find the trial court did not abuse its discretion in holding Husband responsible for the cost of all of the transportation for visitation.

### IV.

Mother seeks her attorney's fees incurred on this appeal. We find that she is entitled to such an award and therefore remand this case to the trial court for a determination of a reasonable fee. *See D v. K*, 917 S.W.2d 682, 687 (Tenn. Ct. App. 1995) (awarding reasonable attorney fees upon petition for rehearing and remanding to trial court for a determination of said fees).

### V.

The judgment of the trial court is affirmed. This case is remanded to the trial court for a determination of a reasonable fee for the appellate work of Wife's counsel and for the collection of

costs assessed below, all pursuant to applicable law.  Costs on appeal are taxed to the appellant, Frederick Herman Ohme, IV.

_____
CHARLES D. SUSANO, JR., JUDGE