# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### June 29, 2006 Session

## THERESSA JOANNE BOOKER v. RICARDO BAYTONIA BOOKER, JR.

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-DI-03-414      Laurence M. McMillan, Chancellor**

---

**No. M2005-01455-COA-R3-CV - Filed on October 26, 2006**

---

This is a divorce case. The trial court granted Theressa Joanne Booker ("Wife") a divorce from Ricardo Baytonia Booker, Jr. ("Husband"), divided the parties' property, and decreed an award of alimony *in solido* and alimony *in futuro*. Husband appeals, asserting that the division of marital property was not equitable. He also challenges the propriety of each of the alimony awards. We modify the trial court's award of alimony *in futuro* so as to make it an award of rehabilitative alimony. As modified, the trial court's judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Ricardo Baytonia Booker, Jr.

Sharon T. Massey, Clarksville, Tennessee, for the appellee, Theressa Joanne Booker

## OPINION

I.

In its judgment of divorce, the trial court made the following division of marital property:

| Property | Value | Awarded to | |
| | | Wife | Husband |
| --- | --- | --- | --- |
| Marital Home | $ 96,200 | $76,200 | $20,000 |
| Thrift Sav. Acc. | 8,000 | 8,000 | |
| 1999 Lexus | 17,000 | | 17,000 |
| Van | 1,000 | | 1,000 |
| Motorcycle | 8,000 | | 8,000 |
| Coin collection | 375 | | 375 |
| 1989 Toyota | value unk. | value unk. | |
| Dining rm. hutch | value unk. | value unk. | |
| Grandfather clock | value unk. | value unk. | |
| | 153,575 | 84,200 | 46,375 |
| | $130,575 | $84,200 | $46,375 |

The total value of all of the interests in the marital residence is actually $119,200 rather than the $96,200 reflected in the above schedule. The $23,000 difference was awarded to Wife as alimony *in solido* rather than as a division of property. The trial court also held that each of the parties is entitled to one-half of the other's retirement benefits. There is no proof as to the present-day value of either retirement plan.

The statement of the evidence reflects that the parties, prior to the hearing below, divided items of personal property not reflected in the above schedule. The skimpy record before us does not show the values of these other items of personal property.

The trial court's judgment provides that Husband will pay Wife $500 per month as alimony *in futuro*.

II.

Husband appeals and raises the following issues:

1. Does the evidence preponderate against the trial court's award of alimony *in solido* and its award of alimony *in futuro*.

2. Does the evidence preponderate against the trial court's division of the marital property.

-2-

III.

A.

Our review of the trial court's findings of fact is *de novo* upon the record of the proceedings below, accompanied by a presumption of correctness, a presumption we must honor unless the preponderance of the evidence is against those findings. Tenn. R. App. P. 13(d); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). There is no presumption of correctness as to the trial court's conclusions of law. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996).

B.

A trial court has broad discretion in fashioning a division of marital property. ***Fisher v. Fisher***, 648 S.W.2d 244, 246 (Tenn. 1983); ***Barnhill v. Barnhill***, 826 S.W.2d 443, 449-50 (Tenn. Ct. App. 1991). It has the same broad discretion with respect to an award of alimony. ***Aaron v. Aaron***, 909 S.W.2d 408, 410 (Tenn. 1995); ***Anderton v. Anderton***, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998).

In evaluating whether a trial court has abused its discretion, we are bound by the principle that the trial court "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting ***State v. Scott***, 33 S.W.3d 746, 752 (Tenn. 2000) and ***State v. Gilliland***, 22 S.W.3d 266, 273 (Tenn. 2000)). A trial court abuses its discretion when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." ***State v. Shirley***, 6 S.W.3d 243, 247 (Tenn. 1999) (citation omitted). An appellate court cannot substitute its judgment for that of the trial court. ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 927 (Tenn. 1998).

IV.

Husband's primary contention with respect to the trial court's alimony decrees is that Wife failed to demonstrate any need for either type of alimony. He argues that the parties' respective financial and other circumstances are virtually the same. As to the award of alimony *in futuro*, Husband asserts that Wife is not economically disadvantaged and does not need to be rehabilitated. Husband also contends that the trial court's alimony decrees were designed to punish him for his conduct during the marriage.

There are no hard and fast rules governing spousal support decisions. ***Anderton***, 988 S.W.2d at 682. Generally, trial courts "have the prerogative to determine the type of spousal support that best fits the circumstances of the case and may award several different types of support in the same case when the facts warrant it." ***Id.*** Tennessee law provides four different types of alimony that may be appropriate in combination or alone: "rehabilitative alimony, alimony in futuro, also known as

periodic alimony, transitional alimony, or alimony in solido, also known as lump sum alimony." T.C.A. § 36-5-121(d)(1) (2005).

Decisions regarding spousal support require a careful balancing of the statutory factors and depend upon the unique facts of each case. *Anderton*, 988 S.W.2d at 683. T.C.A. § 36-5-121(i) sets forth a list of relevant factors for a trial court to consider in determining whether alimony is appropriate, and if so, the nature, amount, length of term, and manner of payment:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
> (3) The duration of the marriage;
>
> (4) The age and mental condition of each party;
>
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
>
> (7) The separate assets of each party, both real and personal, tangible and intangible;
>
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
>
> (9) The standard of living of the parties established during the marriage;
>
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The "real need of the [disadvantaged] spouse seeking the support is the single most important factor ... [and next] the courts most often consider the ability of the obligor spouse to provide support." *Aaron*, 909 S.W.2d at 410 (citation omitted).

In this case, the trial court determined that decrees of alimony *in solido* and alimony *in futuro* were appropriate. Specifically, the trial court set aside to Wife $23,000 of the value of the marital residence as alimony *in solido*. It also awarded her $500 per month as alimony *in futuro*. The trial court's judgment states that the following factors support such an award: "the duration of the marriage, the education of the parties, the earning capabilities of the parties, the age of the parties, physical and mental health, the contribution to the assets, and the relative fault of the parties." The statement of the evidence reflects the trial court's decision from the bench in slightly more detail:

I find that [Husband] has a higher earning capacity than [Wife], Tenn. Code Ann. § 36-5-121(i)(1); that he has greater education and training than she does, § 36-5-121(i)(2); that the marriage is of long duration, § 36-5-121(i)(3); that both parties made tangible and intangible contributions to the marriage, § 36-5-121(i)(10); and that [Husband's] fault was greater than [Wife's], § 36-5-121(i)(11).

The record reveals that the parties were married on October 16, 1979. At the time of the divorce hearing, Husband was 47 and Wife was 45. The couple have two children, both of whom have reached the age of majority. Wife testified that she was primarily responsible for raising the children throughout the marriage. She had a 20-year work history with the United States Corps of Engineers. Her salary was $41,000 per year. She has an associate's degree, and is presently pursuing a bachelor's degree. Wife testified that she suffers from some physical and mental health issues.

Husband has a bachelor's degree and a master's degree in Public Management. At the time of the hearing below, he was earning $45,239 per year at the Department of Defense in Washington, D.C.[1] In addition, he was receiving a disability payment of $1,147 per month as a result of his military service. Hence, Husband's total annual gross income was $59,003. Husband admitted to having one extramarital affair, and a divorce was granted to Wife on the basis of Husband's inappropriate marital conduct. However, Husband testified that Wife contributed to the demise of their marriage by complaining constantly and exhibiting violent behavior on several occasions.

---

[1] Husband also received a location allowance of several thousand dollars for the Washington, D.C. area. We agree with Husband that this amount should not be included in a calculation of his overall income because the allowance ended in July, 2005.

Addressing the issue of need for spousal support, Wife submitted an income and expense statement reflecting the following monthly expenses associated with her standard of living:[2]

| | |
|---|---|
| Home Taxes & Ins. | $ 112.56 |
| Utilities | 265.00 |
| Car operation | 296.00 |
| Insurance | 173.95 |
| New auto | 400.00 |
| Household repairs | 200.00 |
| Other | 550.00 |
| Total | $1,997.51 |

Wife testified that her house and automobile both needed repairs. Her statement of income and expense includes an allowance for these expenses. Wife's take-home pay is $2,372.33 per month. Her house is paid for and she has no debt.

We disagree with Husband's contention that Wife is not economically disadvantaged vis-a-vis him. Husband's gross income is approximately $18,000 per year more than Wife's annual salary of $41,000. Under the circumstances of this case, we agree with the trial court's implicit finding of Wife's economic disadvantage.

There is a statutory bias in favor of rehabilitative alimony. T.C.A. § 36-5-121(d)(2); *see also Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000). According to the statutory definition, "[t]o be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties." T.C.A. §§ 36-5-121(d)(2), (e)(1).

Wife's statement of income and expenses shows that Wife's current income is sufficient to meet her general obligations. However, the record as a whole militates in favor of a finding of need over and above Wife's general expenses. Wife testified that she is pursuing a bachelor's degree on a part-time basis and has secured a school loan. Her statement of expenses does not reflect any school expenses. By the same token, it does not provide for the establishment of a fund to cover the repayment of her loan. We hold that the record preponderates in favor of a factual finding that Wife has a need for spousal support. However, we disagree with the trial court's implicit finding that Wife cannot be rehabilitated. We believe she can be. Wife stated that she anticipates that she will

---

[2] It bears noting that Wife also claimed monthly expenses for her children, who, as previously noted, have reached the age of majority. Wife is not entitled to recover child support for adult children. *Bryan v. Leach*, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001).

complete her additional education in five years. Certainly, this additional education can be expected to enhance her capacity to earn more income than she is currently earning.

Considering the two most critical factors in making an award of alimony, the "real need" of the spouse and the ability of the obligor spouse to pay, as well as the remaining statutory factors set forth in T.C.A. § 36-5-121(i), this Court holds that an award of rehabilitative alimony of $500 per month for 60 months is appropriate. This period coincides with Wife's five-year education plan. The evidence preponderates against the trial court's decision to award Wife alimony *in futuro* of $500 per month. The record simply does not support an award of alimony "on a long-term basis or until death or remarriage." *See* T.C.A. § 36-5-121(d)(3).

The evidence does not preponderate against the trial court's decision to award Wife $23,000 alimony *in solido* in the form of a portion of her interest in the value of the marital residence. When this award is measured against the factors set forth in T.C.A. § 36-5-121(i), we cannot say that this award was an abuse of the trial court's broad discretion.

We find no evidence that the trial court's decrees regarding alimony were *improperly* prompted by Husband's misconduct. Under T.C. A. § 36-5-121(i), the "relative fault of the parties" is something a trial court is authorized to consider in the alimony question. The trial court in the instant case found that "[Husband's] fault was greater than [Wife's]." The evidence does not preponderate against this finding. There is no evidence suggesting that either of the alimony decrees was punitive in nature.

V.

Husband contends that the trial court's division of marital property is not equitable. In addition, Husband maintains that the trial court improperly relied upon his misconduct in dividing the marital property.

T.C.A. § 36-4-121(a)(1) (2005) directs the trial court to "equitably divide ... the marital property between the parties ... in proportions as the court deems just." As explained by this Court in **Batson v. Batson**, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988),

> an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

T.C.A. 36-4-121(c) sets forth the factors to be considered in dividing marital property:

> (1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Fault of a party is not to be considered in dividing marital property. T.C.A. § 36-4-121(a)(1).

As demonstrated above, the trial court divided that portion of the marital estate, upon which the parties could not agree, such that Wife received assets valued at $84,200 and Husband received assets valued at $46,375. Wife also received several assets to which there was no value assigned in the statement of evidence or the final judgment, and the parties divided other undescribed personal property prior to the hearing without specifying the value of same. In addition, the trial court stated that each spouse was entitled to half of the other spouse's retirement. The record reveals that Wife will receive $441 per month as her half of Husband's retirement, which did not include his monthly

disability payment at that time. Husband will receive his half of Wife's retirement when she becomes eligible to receive it. Neither the statement of the evidence nor the final judgment provides any explanation for the trial court's decision with regard to dividing the martial property between the parties.

This Court is somewhat hindered in its ability to decide whether the overall effect of the division of the parties' marital property is equitable because we do not know the value of the other assets divided between them. With that said, we cannot say that the evidence preponderates against the overall division of the marital estate. We note, however, that the proof discussed in Section IV of this brief, which also touches upon the relevant factors stated in T.C.A. § 36-4-121(c), warrants a division that favors Wife more heavily. Therefore, we affirm the trial court's judgment with regard to the division of marital property.

Finally, addressing Husband's contention that the trial court improperly considered his misconduct in making a division, it does not appear in the record that the trial court's decision was based upon a consideration of the fault of either party.

VI.

The trial court's award of alimony is modified so as to provide that Husband will pay Wife rehabilitative alimony of $500 per month for 60 months from and after the date of entry of the judgment of divorce. The judgment is affirmed in all other respects. This case is remanded to the trial court for enforcement of its judgment, as modified, and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed half to the appellee, Theressa Joanne Booker and half to the appellant, Ricardo Baytonia Booker, Jr.

_____
CHARLES D. SUSANO, JR., JUDGE