IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 12, 2019 Session

## LISA LYON WILLIAMS v. LANE EDWARD WILLIAMS

**Appeal from the Chancery Court for Madison County**
**No. 74473     James F. Butler, Chancellor**

_____

### No. W2018-00800-COA-R3-CV
_____

This is a divorce case. Husband/Appellant appeals the trial court's: (1) award of alimony *in futuro* to Wife*;* (2) award of alimony *in solido* for Wife's attorney's fees; and (3) classification of certain jewelry as Wife's separate property. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which, ANDY D. BENNETT and ARNOLD B. GOLDIN, JJ., joined.

David W. Camp, Jackson, Tennessee, for the appellant, Lane Edward Williams.

Alicia A. Howard, Memphis, Tennessee, for the appellee, Lisa Lyon Williams.

### OPINION

### I. Background

Appellant Lane Edward Williams ("Husband") and Appellee Lisa Lyon Williams ("Wife") were married in August 1995. One child, now an adult, was born to the marriage. When the parties met, Wife was a critical-care nurse in an open-heart intensive care unit, and Husband was a medical resident at Brookdale Hospital in New York. The parties lived and worked together in New York until Husband completed his residency in 1994. Upon completing his residency, the parties moved to a small town in Iowa for Husband's career, and they married in 1995. By this time the parties were expecting a child. The parties mutually decided that Wife should stay home to care for their child. After living in Iowa for a few years, the parties moved to Illinois for Husband's job. In 2005, the parties moved to Jackson, Tennessee, where they lived at the time of the

divorce. During their time in Jackson, Husband passed his board certification and became a fellow in obstetrics and gynecology. Wife's North Carolina nursing license expired in 2005 after the parties moved to Jackson.

Although Wife did not work outside the home from 1995 until 2010, in 2004, she became a licensed minister and was ordained in 2008. From June 2010 through October 2011, Wife worked as an interim pastor for a small church in Dyersburg, Tennessee. Wife studied at Memphis Theological Seminary and eventually received her Master in Divinity Degree. She then worked as an adjunct professor at the seminary from January 2014 through May 2016. To further her education in ministry, Wife moved to Durham, North Carolina, her original home, in June 2016 where she interned as a chaplain at the Veteran's Hospital Medical Center. In June 2017, she began her chaplain residency at the University of North Carolina Hospital at Chapel Hill. Wife currently lives in North Carolina.

Both parties testified regarding Wife's move to North Carolina. Wife testified that she and Husband discussed divorcing prior to her leaving Jackson, Tennessee. Husband testified that he did not want Wife to attend school in North Carolina and that before leaving for North Carolina, Wife did not communicate to him her plans to file for divorce and move permanently to North Carolina. Husband testified that he believed Wife was visiting family in North Carolina and assumed that she would return to Tennessee to live with him.

On June 10, 2016, Wife filed a complaint for divorce against Husband in the Chancery Court of Madison County, Tennessee ("trial court"). As grounds, Wife alleged irreconcilable differences and inappropriate marital conduct. On September 8, 2016, Husband filed an answer and counter-complaint for divorce. In his answer, Husband admitted the parties had irreconcilable differences but denied inappropriate marital conduct on his part. In his counter-complaint for divorce, Husband also alleged irreconcilable differences and inappropriate marital conduct by Wife. On November 28, 2016, Wife filed an answer to the counter-complaint admitting irreconcilable differences but denying inappropriate marital conduct on her part.

On July 7, 2016, Wife filed a motion for *pendente lite* support. Wife asserted in her motion that after being served with the divorce, Husband withdrew all funds from the parties' joint account, leaving her with no money. On November 4, 2016, the trial court heard Wife's motion and ordered *pendente lite* support in the amount of $4,900.00 per month. The trial court also awarded Wife $5,000.00 in attorney's fees.

The case was tried on October 23, 2017. On December 18, 2017, the trial court entered the final decree of divorce. Later, on December 27, 2017, the trial court issued a letter ruling, wherein it found that both parties had some measure of fault in the breakup of the marriage, but found Husband to be more at fault. The trial court also divided the

marital property and marital debts. Additionally, the trial court: (1) ordered Husband to pay Wife $4,000.00 per month in alimony *in futuro*; (2) ordered Husband to pay Wife $4,000.00 as alimony *in solido* for attorney's fees; and (3) found that Wife's jewelry were gifts from Husband and, as such, were her separate property. On April 13, 2018, the trial court entered a supplemental final decree of divorce incorporating its letter ruling. Husband appeals.

## II. Issues

Husband raises three issues for review, which we restate as follows:

1. Whether the trial court erred when it awarded Wife $4,000.00 per month in alimony *in futuro*.

2. Whether the trial court erred when it ordered Husband to pay Wife $4,000.00 as alimony *in solido* for her attorney's fees.

3. Whether the trial court erred when it classified all of the jewelry as Wife's separate property.

In the posture of Appellee, Wife asks this Court to award her attorney's fees and costs accrued in defense of this appeal.

## III. Standard of Review

"We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise." ***Tennessee Farmers Mut. Ins. Co. v. Debruce***, No. E2017-02078-COA-R3-CV, 2018 WL 3773912, at *3 (Tenn. Ct. App. Aug. 9, 2018) (citing Tenn. R. App. P. 13(d); ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

## IV. Analysis

### A. Alimony in *Futuro*

Trial courts have broad discretion in awarding spousal support. ***Bratton v. Bratton***, 136 S.W.3d 595, 605 (Tenn. 2004). "Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision" absent a trial court's abuse of discretion. ***Kinard v. Kinard***, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). The trial court abuses its discretion when it applies the incorrect legal standard and reaches a decision that is clearly unreasonable. ***Bogan v. Bogan***, 60 S.W.3d 721, 733 (Tenn. 2001)

(citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

Pursuant to Tennessee Code Annotated section 36-5-121(d)(1), "[t]he court may award rehabilitative alimony, alimony *in futuro*, also known as periodic alimony, transitional alimony, or alimony *in solido* . . . ." Tenn. Code Ann. § 36-5-121(d)(1). "[A] court may award alimony to an economically disadvantaged spouse. Once the trial court has found a party to be economically disadvantaged relative to his or her spouse, it must determine the nature, amount, length of term, and manner of payment of the award." *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003). The General Assembly has indicated its preference for rehabilitative alimony, if rehabilitation is possible, to allow for the economically disadvantaged spouse

> to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(d)(2). In determining the type and amount of alimony, the trial court is to consider the following statutory factors, which are set out at Tennessee Code Annotated Section 36-5-121(i), to-wit:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
> (3) The duration of the marriage;
>
> (4) The age and mental condition of each party;
>
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

- 4 -

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

All relevant statutory factors are to be considered by the trial court, but "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 110 (Tenn. 2011) (quoting *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)); *see Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001) (quoting *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995) ("When deciding whether rehabilitation is possible, and, in general, determining the proper form and amount of alimony, courts must consider the 'relevant factors' set forth in section [36-5-121(i)], but 'the real need of the spouse seeking the support is the single most important factor. In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support.'")).

Concerning the award of alimony, the trial court found:

From the evidence in the record, the [c]ourt finds that this is a case for alimony *in futuro*, even though Wife is employed. Husband has been in his chosen field for some 22 years all during the marriage. Wife has only recently ventured into the workforce again and her income will be lower. While alimony is traditionally to provide financial support to a spouse who cannot be rehabilitated, it is also designed to continue the support that was incident to the marriage relationship and it is appropriate when the spouse cannot be rehabilitated. Rehabilitated means to achieve, with a reasonable effort, a comparable standard of living to that during the marriage, or which the other spouse will enjoy after the divorce. It is for an indefinite amount, payable in further periodic installments, and contingent upon the death or

remarriage of the recipient and possibly on the death of the obligor, or other contingencies as imposed by the [c]ourt or statute. The [c]ourt finds Wife will not be able to achieve a comparable standard of living to that during the marriage.

In this case, the parties have been married 22 years[,] which is a long term marriage. Wife has devoted her married life to being a stay at home parent and wife, with all parties' agreement. They have one child who is now an adult and in college. Husband makes some 12 to 13 times what [W]ife earns. The parties have moved several times to facilitate Husband's career. Wife testified, unrebutted, that she made things easy for him to work, and also attended functions and networked with him to further his career. Wife did non-profit and community work for his career. The parties' property division will be relatively equal. Both parties are in good health. The parties enjoyed a relatively high standard of living established during the marriage. The [c]ourt finds [] Husband to be more at fault in the breakup of the marriage. Because of the passage of the new Tax Reform Act, it is unclear what the tax implications of the alimony are. The [c]ourt is unsure if it is going to be deductible to [] Husband and taxable to [] Wife. The parties have indicated they are going to sell the marital home which consumes over $2,000.00 per month in payment. The [c]ourt is also aware that many of [] Husband's expenses are for him and the adult child per his testimony, and that a considerable amount of his expenses have to do with contributions to charity and savings for the son's education expenses, which are not legally factors the [c]ourt can consider.

Based on the testimony and the Exhibits, the [c]ourt finds that Wife's reasonable expenses, after some adjustment by the [c]ourt based on testimony, are $6,700.00 per month. Wife's net income is found to be $2,666.00 per month. Husband's reasonable expenses, after some adjustments based upon the testimony, are found to be $12,500.00 per month. Husband's net income is found to be $23,622.00 per month. Wife is awarded alimony *in futuro* in the amount of $4,000.00 per month beginning January 1, 2018, and monthly thereafter pending further orders of the [c]ourt, Wife's remarriage, or a material change in circumstances.

From the trial court's findings, *supra*, it is clear that the trial court correctly considered the relevant factors under Tennessee Code Annotated section 36-5-121(i) when it awarded Wife alimony *in futuro*. Nonetheless, Husband argues that because Wife has a job and the ability to be self-sufficient, the trial court should have denied her alimony. In the alternative, Husband argues that the trial court should have awarded either transitional or rehabilitative alimony rather than alimony *in futuro*. Husband cites both common and statutory law for the proposition that a court should only award

alimony *in futuro* when it finds that economic rehabilitation is not feasible. The Legislature, at Tennessee Code Annotated section 36-5-121(d)(2), defines rehabilitation as follows:

> To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(d)(2). Here, the trial court made a specific finding that Wife could not be rehabilitated as defined by the statute. Given the disparity between the parties' incomes and earning capacities, Husband has not demonstrated that Wife would ever be able to achieve a standard of living that would be reasonably comparable to the parties' standard of living during the marriage, or to Husband's standard of living post-divorce.

Turning to the record, it is clear that Wife put her career on hold to be a stay at home mother, while also helping to advance Husband's career. The parties moved to three cities for Husband's jobs; Wife was actively involved in community service organizations and attended networking functions with Husband—all in furtherance of his career. Wife was unemployed for fifteen years while she helped Husband advance his career. During the marriage, Husband developed a very lucrative practice. In 2016, his adjusted gross income was $455,176.00. Husband's employment is steady, and there is no evidence to suggest Husband will leave his employment or earn a lower income in the near future. Husband's substantial salary allowed the parties to enjoy a very comfortable lifestyle during the marriage. The parties shared a large marital home. They traveled extensively and enjoyed dining out often at expensive restaurants. After the parties separated, Wife enrolled in a residency program to become a board certified chaplain, and received a $32,000.00 yearly stipend, from which she paid tuition and living expenses. Once she receives board certification, Wife testified that she expects to make approximately $40,000.00 to $50,000.00 per year, which is far less than Husband's current or expected income in the future.

The trial court found that Wife had monthly expenses of $6,700.00, and that Husband had monthly expenses of $12,500.00. At the time of trial, Husband's net income was $23,622.00 per month; Wife's yearly stipend was $32,000.00. According to Wife's testimony, the highest salary she can make in the future as a board certified chaplain is $50,000.00. Accordingly, the evidence clearly shows that Wife is economically disadvantaged relative to Husband, and Husband has the ability to pay the alimony *in futuro* award of $4,000.00 per month. Contrary to Husband's argument, Wife will not be able to achieve a comparable standard of living to that enjoyed by the parties

during the marriage.  This, coupled with Husband's ability to pay alimony *in futuro*, supports the trial court's award of alimony *in futuro* in this case.

## B.  Alimony *in Solido*

The trial court awarded Wife $9,000.00 total in alimony *in solido* ($5,000.00 by order of November 4, 2016 and an additional $4,000.00 in the final decree).  Husband argues that the trial court erred in awarding Wife alimony *in solido* for her attorney's fees.  As explained by the Tennessee Supreme Court,

> [i]t is well-settled that an award of attorney's fees in a divorce case constitutes *alimony in solido*.  The decision whether to award attorney's fees is within the sound discretion of the trial court.  As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). . . .  Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, . . . or the spouse would be required to deplete his or her resources in order to pay them.  Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski*, 350 S.W.3d at 113 (citations omitted).  As discussed, *supra*, the trial court must consider all relevant statutory factors, but "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Riggs*, 250 S.W.3d at 457.

Husband contends that the award of attorney's fees is improper for several reasons.  First, he argues that having been ordered to pay $5,000.00 towards Wife's attorney's fees, he should not be required to pay more.  Second, he argues that Wife will be able to pay her attorney's fees based on the trial court's award of alimony *in futuro* and its division of marital assets.  Finally, he argues that Wife "draws a steady income in the amount of $32,000.00" per year and her income should increase to $53,000.00 after June 2018; therefore, she has the ability to pay her attorney's fees.

Contrary to Husband's arguments, the record shows that Wife's alimony *in futuro* award is sufficient to cover only her living expenses.  Exhibit 25 from the trial demonstrates that Wife's attorney's fees totaled $11,289.93.  Alimony *in solido* "awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses . . . or would be required to deplete his or her resources in order to pay these expenses." *Riggs*, 250 S.W.3d at 459 (citing *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992); *Harwell v. Harwell*, 612 S.W.2d 182, 185

(Tenn. Ct. App. 1980)). Given that the alimony *in futuro* award, coupled with her salary, is sufficient to cover only her monthly living expenses, payment of the remaining balance of Wife's attorney's fees would require Wife to deplete some of the assets she received in the divorce to cover these fees.

In reaching its decision on alimony *in solido*, the trial court considered the factors set out at Tennessee Code Annotated section 36-5-121(i), particularly the two most important factors, "the disadvantaged spouse's need and the obligor spouse's ability to pay." ***Riggs***, 250 S.W.3d at 457. As discussed above, the evidence demonstrates that Husband's income is substantially more than Wife's income, and she is economically disadvantaged relative to him. Furthermore, Wife lacks sufficient funds to pay her legal expenses absent depletion of her limited resources. Given the equities between the parties, we conclude that the evidence preponderates in favor of the trial court's award of alimony *in solido*. Furthermore, by any measure, the alimony *in solido* award for attorney's fees is minimal here considering the income of the Appellant.

### C. Classification of Jewelry as Separate Property

Husband asserts that the trial court erred when it found that Wife's jewelry, valued at $161,535.42, was her separate property. Regarding the classification of property in a divorce, this Court has explained that

> "[q]uestions regarding the classification of property as either marital or separate, as opposed to questions involving the appropriateness of the division of the marital estate, are inherently factual." ***Owens v. Owens***, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007) (citations omitted). As such, we employ the familiar standard of review outlined in Rule 13(d) of the Tennessee Rules of Appellate Procedure. ***Bilyeu v. Bilyeu***, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005). "As a general rule, assets acquired by either spouse during the marriage are presumed to be marital property." ***Owens***, 241 S.W.3d at 485 (citations omitted). Moreover, when a spouse seeks to assert that an asset acquired during the marriage is separate property, he or she bears the burden of proving that fact by a preponderance of the evidence. ***Id.*** at 485-86 (citations omitted).

***Bewick v. Bewick***, No. M2015-02009-COA-R3-CV, 2017 WL 568544, at *7 (Tenn. Ct. App. Feb. 13, 2017).

Tennessee Code Annotated section 36-4-121(b)(2)(D) provides that "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent" is separate property. Tenn. Code Ann. § 36-4-121(b)(2)(D). Husband argues that he purchased the jewelry as an investment during the marriage. Wife contends that the pieces of jewelry were gifts from Husband during the marriage.

Turning to the record, the evidence does not preponderate against the trial court's classification of Wife's jewelry as her separate property. Although Husband claims that he purchased the jewelry as an investment, during cross-examination he admitted that Wife wore the jewelry during the marriage. Wife testified that she wore all of the pieces during the marriage, to-wit:

Q: Did your husband ever have any discussion with you that the items he was purchasing, the jewelry items that he was purchasing that those items were purchased as investments?

A: Not -- no. Not to resell them at any point in time. I wore all of that jewelry. I wore it.

Q: And do you still wear it?

A: Yes. What I still have of it. I do still wear it.

Q: Have you ever witnessed any activity or heard any conversation where your husband was engaged in transactions regarding the investment business of jewelry?

A: Never.

Having reviewed the evidence in accordance with Tennessee Rule of Appellate Procedure 13(d), we conclude that the evidence does not preponderate against the trial court's classification of Wife's jewelry as her separate property. Therefore, we affirm the trial court's determination of the jewelry as Wife's separate property.

### D. Wife's Attorney's Fees on Appeal

One day before oral arguments, Wife filed a motion asking this Court to award her attorney's fees incurred on appeal. Wife did not designate her request for appellate attorney's fees as an issue in her statement of the issues section of her appellate brief. The Tennessee Supreme Court has explained that

[]when a party is seeking attorney fees incurred on an appeal, that request, absent any statute or rule directing otherwise, must be directed first to the appellate court in a timely fashion.[] Our rules of appellate procedure require an appellant to set forth in his or her brief "[a] statement of the issues presented for review." Tenn. R. App. P. 27(a)(4). A claim for appellate attorney's fees is an issue that should be set before the appellate court because a remand to the trial court is not a foregone conclusion. Also

. . . subsection (a)(8) of Rule 27 provides that an appellant's brief shall contain "[a] short conclusion, stating the precise relief sought." Tenn. R.App. P. 27(a)(8). An award of attorney's fees generated in pursuing the appeal is a form of relief; the rule requires it to be stated.

***Killingsworth v. Ted Russell Ford, Inc.***, 205 S.W.3d 406, 410-11 (Tenn. 2006). These rules likewise apply to appellees. Tennessee Rule of Appellate Procedure 27(b) provides that

> [t]he brief of appellee and all other parties shall conform to the foregoing requirements, except that items (3), (4), (5) (6) and 7(B) of subdivision (a) of this rule need not be included except to the extent that the presentation by the appellant is deemed unsatisfactory. **If appellee is also requesting relief from the judgment, the brief of the appellee shall contain the issues and arguments involved in his request for relief** as well as the answer to the brief of appellant.

Tenn. R. App. P. 27(b) (emphasis added). "Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4) [and 27(b)]. An issue not included is not properly before the Court of Appeals." ***Hawkins v. Hart***, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). By failing to include the issue of attorney's fees incurred on appeal in her brief, Wife has waived same.

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed against the Appellant, Lane Edward Williams, and his surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE